JUSTICE LaVECCHIA delivered the opinion of the Court.
**307 In this appeal, we address whether parties to a consumer contract intended to create an agreement to arbitrate through the insertion of language within an alternative dispute resolution provision. See Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 435, 99 A.3d 306 (2014) (observing that inclusion of arbitration provisions in consumer contracts is now "commonplace").
Both the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, value the benefits from arbitration of disputes and encourage enforcement of arbitration agreements. See *770 Roach v. BM Motoring, LLC, 228 N.J. 163, 173-74, 155 A.3d 985 (2017). In determining whether to give effect to the disputed alternative dispute resolution provision here, we are mindful that federal law requires that arbitration agreements be placed "on equal footing with all other contracts." Kindred Nursing Ctrs. L.P. v. Clark, 581 U.S. ----, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017) (quoting DIRECTV, Inc. v. Imburgia, 577 U.S. ----, 136 S.Ct. 463, 465, 193 L.Ed.2d 365 (2015) ). Our case law recognizes that obligation as well. See Atalese, 219 N.J. at 440-41, 99 A.3d 306 (collecting cases).
In dispensing even treatment to arbitration agreements, basic contract formation and interpretation principles still govern, for there must be a validly formed agreement to enforce. See Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ; Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132, 773 A.2d 665 (2001). We apply state law principles of contract formation in that analysis. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts.").
**308 In this matter, plaintiff Amanda Kernahan entered into an agreement with defendants for a home maintenance warranty. When she became dissatisfied, she filed a complaint in Superior Court seeking statutory and common law relief. Defendants sought dismissal of the action, arguing that the contract's alternative dispute resolution provision, labeled "MEDIATION," contained language that required plaintiff to proceed with her claims exclusively through arbitration.
The trial court refused to dismiss plaintiff's complaint, finding in the language of the provision no mutuality of assent to have formed an agreement to arbitrate. The Appellate Division affirmed. We granted certification to review defendants' argument that an overly demanding review resulted in a prohibited hostility to arbitration. Defendants also contended that our recent decision in Atalese, which examined a contract for mutuality of assent to arbitrate, thereby waiving one's right to pursue claims in court, violated recent United States Supreme Court pronouncements in Kindred Nursing about FAA requirements. Because defendants have retreated from their argument that our decision in Atalese transgresses the FAA under Kindred Nursing, we do not address that contention. We will not address an argument that, at this time, is advanced only by amici.
In our de novo review of the pivotal provision at issue in the disputed contract, we conclude that the so-called "arbitration agreement" within this consumer contract fails to support a finding of mutuality of assent to form an agreement to arbitrate. The provision's language is debatable, confusing, and contradictory -- and, in part, misleading. The "arbitration agreement" touted by defendants is also obscure when this consumer contract is viewed as a whole. The provision does not fairly convey to an ordinary person that arbitration would be the required method of dispute resolution.
Accordingly, for the reasons expressed herein, we concur in the judgment that declined to enforce this provision as an understandable mutual agreement to arbitrate disputes, which, thereby, **309 allowed plaintiff to proceed with her claims in the action she filed in court.
I.
A.
Because this appeal arises from a denial of a motion to dismiss, we recite the facts *771 as alleged in plaintiff's November 30, 2015 putative class action complaint. In the spring of 2015, plaintiff purchased a "home service agreement" from defendants Home Warranty Administrator of Florida, Inc., and Choice Home Warranty (collectively, defendants). The agreement was essentially a consumer contract whereby defendants would pay for and arrange for a certified contractor to repair or replace certain home appliances at plaintiff's property in Orlando, Florida, in exchange for the contract term price of $1050.
Becoming dissatisfied, plaintiff cancelled the contract in June 2015 and received a refund of the purchase price.[1] In November 2015, she filed the instant complaint alleging that defendants violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20; the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18; and the implied covenant of good faith and fair dealing. She claimed that the agreement misrepresented its length of coverage and that the deceptively labelled "MEDIATION" section of the agreement failed to inform her that she was waiving her right to a jury trial and would be deterred from seeking the additional remedies of treble damages, punitive damages, and attorney's fees and costs.[2] Defendants filed **310 a motion to dismiss the complaint with prejudice in favor of arbitration, citing the agreement's alternative dispute resolution provision.
The alternative-dispute-resolution section of the agreement that is the focus of this appeal appears on the fifth and last page of the contract, and it reads in full as follows:
G. MEDIATION
In the event of a dispute over claims or coverage You agree to file a written claim with Us and allow Us thirty (30) calendar days to respond to the claim. The parties agree to mediate in good faith before resorting to mandatory arbitration in the State of New Jersey. Except where prohibited, if a dispute arises from or relates to this Agreement or its breach, and if the dispute cannot be settled through direct discussions you agree that:
1. Any and all disputes, claims and causes of action arising out of or connected with this agreement shall be resolved individually, without resort to any form of class action.
2. Any and all disputes, claims and causes of action arising out of or connected with this Agreement (including but not limited to whether a particular dispute is arbitrable hereunder) shall be resolved exclusively by the American Arbitration Association in the state of New Jersey under its Commercial Mediation Rules. Controversies or claims shall be submitted to arbitration regardless of the theory under which they arise, including without limitation contract, tort, common law, statutory, or regulatory duties or liability.
3. Any and all claims, judgments and awards shall be limited to actual out-of-pocket costs incurred to a maximum of $1500 per claim, but in no event attorneys fees.
4. Under no circumstances will you be permitted to obtain awards for, and you hereby waives [sic] all rights to claim, *772 indirect, punitive, incidental and consequential damages and any other damages, other than for actual out-of-pocket expenses, and any and all rights to have damages multiplied or otherwise increased. All issues and questions concerning the construction, validity, interpretation and enforceability of this Agreement, shall be governed by, and construed in accordance with, the laws of the State of New Jersey, U.S.A. without giving effect to any choice of law or conflict of law rules (whether of the State of New Jersey or any other jurisdiction), which would cause the application of the laws of any jurisdiction other than the State of New Jersey.
[ (bolded emphasis in original) (underlined emphases added).]
Before the trial court, defendants argued that the contract's "arbitration provision" is valid and enforceable, containing several clauses that put plaintiff on notice that she is waiving her right to a jury trial, even though the provision does not explicitly reference a jury trial. Defendants maintained that the provision satisfied this **311 Court's prior case law, including Atalese, because the provision's language is "clear on [its] face" and without ambiguity.
Plaintiff argued that the arbitration requirement is ambiguous and that it is not conspicuous in the written document. She further argued that the arbitration language in the alternative dispute resolution provision does not satisfy the requirements for a knowing waiver of rights, citing Atalese and emphasizing the provision's failure to convey what arbitration is or how it is different from a court proceeding. Plaintiff maintained, in sum, that the failure to include language amounting to a knowing waiver coupled with the lack of conspicuousness of the arbitration language, buried in this contract's small font, precluded enforcement of defendants' asserted "arbitration agreement."
The trial court denied defendants' motion to dismiss in an oral opinion, concluding that the arbitration provision is unenforceable. The court found the provision both ambiguous and noncompliant with Atalese"in either its form or its function." The trial court reasoned that the provision does not contain clear language that would inform the consumer she is agreeing to arbitrate all disputes and that she is waiving her right to a jury trial. The court cited the provision's failure to convey unambiguously to a consumer that there is a difference between resolving a dispute in court and resolving it in arbitration.
Defendants filed for reconsideration, adding to their argument that the provision adequately informs the consumer that she is waiving her right to a court proceeding by stating that all claims will be resolved "exclusively" by arbitration. Plaintiff countered that the word "exclusively" was insufficient, alone, to clarify defendants' desired message because the clause remained ambiguous. Plaintiff emphasized the provision's confusing references to mediation and arbitration in discussing proceedings and rules of procedure.
In a written opinion, the trial court denied reconsideration. Relying on Atalese, the court reasoned once again that the arbitration provision was not sufficiently clear to have created an **312 agreement to arbitrate, thereby waiving the right to proceed in court. The court noted ambiguities in the provision before concluding that the provision's language is not clear and straightforward, is not satisfactorily conspicuous or distinguished from the other contract terms, and does not convey that there is a difference between arbitration and judicial proceedings. The court rejected the argument that the provision's placement of the word "exclusively" would or *773 should have adequately informed plaintiff that she is waiving her right to proceed in court, as opposed to use of other available dispute resolution processes.
On appeal to the Appellate Division, see R. 2:2-3(a) (orders denying arbitration appealable as of right as a final judgment), defendants again argued that the arbitration provision is enforceable. Plaintiff advanced largely the same arguments that she did before the trial court.
In an unpublished opinion, the Appellate Division affirmed the trial court's refusal to dismiss the complaint. Relying on Atalese, the panel reasoned that "[a]n arbitration provision that fails to 'clearly and unambiguously signal' to parties that they are surrendering their right to pursue a judicial remedy renders such an agreement unenforceable." The panel determined the provision to be unenforceable because "[j]ust stating that arbitration is the 'exclusive' remedy ... is not sufficient" to inform a consumer that she is waiving her right to a jury trial. The panel added that there must be explanatory comment to notify an average member of the public that arbitration is a substitute for the right to adjudicate a claim in court.
We granted defendants' petition for certification. 231 N.J. 334, 175 A.3d 177 (2017). We also granted amicus curiae status to the New Jersey State Bar Association (NJSBA); the New Jersey Association for Justice (NJAJ); the New Jersey Business & Industry Association, the Commerce and Industry Association of New Jersey, and the New Jersey Chamber of Commerce (collectively, "the Industry Associations").
**313 II.
A.
In their petition for certification, defendants asserted that Atalese requires a valid arbitration clause to contain a "clear and unambiguous" statement that waives the right to proceed in court. Thus, according to defendants, Atalese was preempted by the FAA in light of the United States Supreme Court's decision in Kindred Nursing.[3] Kindred Nursing was decided roughly one month before the Appellate Division's decision in this matter.
However, in oral argument before the Court, defendants clarified that their argument does not advance the position that Atalese is in conflict with Kindred Nursing. In withdrawing from their earlier position, defendants instead note, expressly, that Atalese does not impose a requirement for the type of formal waiver language stricken in Kindred Nursing. Therefore, defendant is no longer asking us to overturn Atalese in this appeal.
Instead, defendants now maintain that the Appellate Division decision worked an improper expansion of Atalese by imposing a requirement of formal waiver language in arbitration agreements, in violation of Kindred Nursing and the FAA. Defendants reason that, by finding that necessary waiver language was absent from the arbitration provision, the Appellate Division effectively created a Kindred Nursing-prohibited clear-statement rule.
*774 Further, defendants argue that the Appellate Division should have recognized that an arbitration provision that explicitly states **314 that it is the exclusive remedy to resolve disputes satisfies clarity requirements, thereby placing consumers on notice that their only remedy is arbitration. Defendants assert that the Appellate Division erred in not reading the provision as a whole and instead parsing the provision improperly by focusing on the word "exclusively."
B.
Much of plaintiff's argument involves responding to defendants' initial position. Suffice it to say that, in distinguishing Kindred Nursing from Atalese, plaintiff points out that Atalese reflects "New Jersey's long-standing and neutral requirement" that contractual waivers of rights be contextually understandable to meet essential requirements for mutual assent.
Further, plaintiff argues that the arbitration provision in her contract is ambiguous. Because the provision failed to convey what she was agreeing to by signing a contract with that provision in it, plaintiff asserts that there was no basis for mutual assent and understanding about arbitration. Plaintiff adds that the provision neither distinguishes arbitration from a proceeding in court -- or, for that matter, from other dispute resolution mechanisms -- nor contains any waiver language. At the hearing on defendant's motion to dismiss, plaintiff's counsel also emphasized the "extraordinarily small font" of the arbitration provision.
C.
Amicus NJSBA urges that we affirm of the Appellate Division decision because the arbitration provision contains misleading terms and lacks waiver language. The NJSBA also distinguishes Kindred Nursing from our decision in Atalese. The NJSBA warns that reversing Atalese will cause consumers to be "presented with confusing and difficult to understand arbitration provisions that fail to place the consumer on notice that he or she is waiving a constitutional or statutory right."
**315 D.
The NJAJ urges that we affirm of the Appellate Division judgment because the alternative dispute resolution provision fails to satisfy the prerequisites for the formation of a valid contract. The NJAJ asserts that no meeting of the minds could have occurred here for three reasons: (1) the provision at issue is misleadingly titled "MEDIATION," "creating the impression that the mechanism being established is non-binding settlement discussions"; (2) the provision lacks waiver language; and (3) the provision uses "mandatory" language but does not address the right to go to court, the very right the clause seeks to waive.
The NJAJ points out that the "MEDIATION" provision fails to comply with New Jersey's Plain Language Act, N.J.S.A. 56:12-1 to -13 (PLA), applicable to all consumer contracts in this state as noted in Atalese, because "it is not written in a simple, clear, understandable, and easily readable way." Amicus reasons that the arbitration provision in this consumer contract is buried in a section labeled "MEDIATION" and is printed in a smaller font-size than that required by the PLA. The NJAJ asserts that the provision is in size 6.5 Helvetica font.[4] In other words, the provision fails the conspicuousness test.
*775 The NJAJ further agrees with the NJSBA's position that Atalese is distinguishable from Kindred Nursing because "New Jersey has long applied its waiver of rights analysis to all contracts."
E.
Amici, the Industry Associations, ask us to overrule Atalese even if defendants no longer advance that argument. They maintain that "[t]he same impermissible justifications used by the Kentucky Supreme Court were also used by this Court in Atalese... when it required that all arbitration agreements contain 'clear **316 and unambiguous language' that an individual is waiving her right 'to bring her claims in court or have a jury resolve the dispute.' " The Industry Associations contend that the FAA preempts Atalese because, by requiring specialized language of waiver, the Atalese decision disregards "the fundamental characteristic of arbitration -- the waiver of the right to resolve a dispute in a court before a jury." That, they contend, results in Atalese's placing arbitration clauses on unequal footing with other contracts.
Here, the Industry Associations ask us to enforce the instant arbitration provision because they maintain that the provision clearly states that any and all claims will be resolved through arbitration.
III.
A.
De novo review applies when appellate courts review determinations about the enforceability of contracts, including arbitration agreements. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186, 71 A.3d 849 (2013). Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial or appellate courts unless we find it persuasive. Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03, 137 A.3d 1168 (2016) (citing Atalese, 219 N.J. at 445-46, 99 A.3d 306 ).
B.
Federal and state law governing arbitration agreements guide this matter.
1.
In 1925, Congress enacted the FAA "to place arbitration agreements upon the same footing as other contracts."
**317 Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA was intended, in part, to curb a perceived "widespread judicial hostility to arbitration agreements." AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ; see also Epic Sys. Corp. v. Lewis, --- U.S. ----, 138 S.Ct. 1612, 1621, 200 L.Ed.2d 889 (2018) (same). As stated further in Concepcion, the FAA's " 'principal purpose' ... is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " 563 U.S. at 344, 131 S.Ct. 1740 (quoting Volt, 489 U.S. at 478, 109 S.Ct. 1248 ) (alteration in original).
Section two of the FAA promotes those goals by prescribing that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section two's savings clause "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 563 U.S. at 339, 131 S.Ct. 1740 (quoting *776 Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ).
An arbitration agreement is valid only if the parties intended to arbitrate because parties are not required "to arbitrate when they have not agreed to do so." Volt, 489 U.S. at 478, 109 S.Ct. 1248. Section four of the FAA requires courts to compel arbitration "in accordance with the terms of the agreement," assuming that the "making of the arbitration agreement" is not in issue. Concepcion, 563 U.S. at 344, 131 S.Ct. 1740 (quoting 9 U.S.C. § 4 ).[5] The Supreme Court instructs that "[w]hen deciding **318 whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." First Options, 514 U.S. at 944, 115 S.Ct. 1920.
In a recent opinion, the Supreme Court emphasized the FAA's "equal-treatment principle," stating that the FAA not only preempts any state rule that facially discriminates against arbitration but also "displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements." Kindred Nursing, 137 S.Ct. at 1426. The Supreme Court held that a Kentucky Supreme Court ruling requiring specific authority for an attorney-in-fact to waive her principal's right to a jury trial "singles out arbitration agreements for disfavored treatment ... [and] violates the FAA." Id. at 1425. The Court cautioned that state court decisions that rest on general principles may violate the FAA if they implicitly "rely on the uniqueness of an agreement to arbitrate as [their] basis." Ibid. (quoting Concepcion, 563 U.S. at 341, 131 S.Ct. 1740 ).[6]
2.
New Jersey codifies its own hospitable approach toward arbitration in the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, using terms nearly identical to those of the FAA. See Roach, 228 N.J. at 173-74, 155 A.3d 985 (citing **319 Atalese, 219 N.J. at 440, 99 A.3d 306 ). The statutory policies of the FAA and New Jersey law are in synchronicity.
In this state, when called on to enforce an arbitration agreement, a court's initial inquiry must be -- just as it is for any other contract -- whether the agreement to arbitrate all, or any portion, of a dispute is "the product of mutual assent, as determined under customary principles of contract law." Atalese, 219 N.J. at 442, 99 A.3d 306 (internal quotation marks and citation omitted). And, equivalent to federal law, parties may not be compelled "to arbitrate when they have not agreed to do so." Ibid. (quoting Volt, 489 U.S. at 478, 109 S.Ct. 1248 ); see also Garfinkel, 168 N.J. at 132, 773 A.2d 665 ("[O]nly those *777 issues may be arbitrated which the parties have agreed shall be.") (quoting In re Arbitration Between Grover & Universal Underwriters Ins. Co., 80 N.J. 221, 228, 403 A.2d 448 (1979) ). As a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered. See Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538, 95 A.2d 391 (1953) ("[A] contract does not come into being unless there be a manifestation of mutual assent by the parties to the same terms .... [I]t is elementary that there can be no operative acceptance by acts or conduct unless the offeree's assent to the offer according to its terms is thereby unequivocally shown.").
In Atalese, this Court relied on mutuality of assent as its animating principle when we considered the enforceability of an agreement to arbitrate in a consumer contract for debt-adjustment services. 219 N.J. at 442, 99 A.3d 306. We were guided essentially by twin concerns. First, the Court was mindful that a consumer is not necessarily versed in the meaning of law-imbued terminology about procedures tucked into form contracts. Ibid. The decision repeatedly notes that it is addressing a form consumer contract, not a contract individually negotiated in any way; accordingly, basic statutory consumer contract requirements about plain language implicitly provided the backdrop to the contract under review. Id. at 444, 99 A.3d 306. And, second, the Court was **320 mindful that plain language explanations of consequences had been required in contract cases in numerous other settings where a person would not be presumed to understand that what was being agreed to constituted a waiver of a constitutional or statutory right. Id. at 442-44, 99 A.3d 306.
At bottom, the judgment in Atalese, which declined to enforce the arbitration provision at issue, is rooted in the notion that mutual assent had not been achieved because the provision did not, in some fashion, explain that it was intended to be a waiver of the right to sue in court. Id. at 436, 99 A.3d 306. Because the provision could not be deemed a knowing waiver of the right to sue in court, a meeting of the minds did not occur. Id. at 435, 447, 99 A.3d 306. The consumer context of the contract mattered. Id. at 444, 99 A.3d 306 (referencing N.J.S.A. 56:12-2). That said, the decision imposes no talismanic recitations, acknowledging that a meeting of the minds can be accomplished by any explanatory comment that achieves the goal of apprising the consumer of her rights. Id. at 445, 447, 99 A.3d 306.
IV.
A.
In this matter, we again review consumer contract language to determine whether there was mutuality of assent to form an agreement to arbitrate. But, unlike in Atalese, the question in this case is whether mutuality of assent is achieved when a provision confusingly and unpredictably shifts between the terms "arbitration" and "mediation" and the procedures for the two types of proceedings.
A court's objective in construing a contract is to determine the intent of the parties. Kieffer v. Best Buy, 205 N.J. 213, 223, 14 A.3d 737 (2011). "In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain."
**321 Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957). In New Jersey, we have a Plain Language Act that imposes certain simple principles on consumer contracts generally -- to wit, they must use plain language that is commonly *778 understood by the wide swath of people who comprise the consuming public. By doing so, we then can confidently state that, even in the consumer context, "[a] party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681 (1992) (quoting Fivey v. Pa. R.R., 67 N.J.L. 627, 632, 52 A. 472 (E. & A. 1902) ).
A basic tenet of contract interpretation is that contract terms should be given their plain and ordinary meaning. Roach, 228 N.J. at 174, 155 A.3d 985 ; M.J. Paquet, Inc. v. DOT, 171 N.J. 378, 396, 794 A.2d 141 (2002). Here, the parties and amici have varying positions on whether the term arbitration is self-defining. Atalese recognizes that "[b]y its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." 219 N.J. at 442, 99 A.3d 306 (citation and internal quotation marks omitted). However, in the context of that decision, we were unwilling to attribute knowledge of that definition to consumers in part because "an average member of the public may not know -- without some explanatory comment -- that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Ibid.
In this instance, we examine the use of the word "arbitration" in the context of the contract to determine if its meaning is apparent, and whether it can therefore supply the mutual assent required for the provision to constitute a meeting of the minds. We find that the meaning of the provision is not apparent from the manner in which it relayed information to the consumer who signed the contract. Although we are not expecting a specific recitation of words to effect a meeting of the minds to create an agreement to arbitrate, the construct and wording of the instant provision are too confusing and misleading to meet simple plain wording standards **322 demanded by the public policy of this state for consumer contracts.
B.
Plaintiff has argued throughout these proceedings that the arbitration agreement lacks sufficient clarity to be enforced. She points to the multiple ambiguities and inconsistencies within the provision. She advances a compelling argument that "the arbitration provision's inconspicuous location and confusing, inconsistent and contradictory terms are unenforceable." We discuss those points in turn.
A consumer cannot be required to arbitrate when it cannot fairly be ascertained from the contract's language that she knowingly assented to the provision's terms or knew that arbitration was the exclusive forum for dispute resolution. In light of that concern, Atalese stands for the proposition that an arbitration agreement is clearly enforceable when its terms affirmatively state, or unambiguously convey to a consumer in a way that he or she would understand, that there is a distinction between agreeing to resolve a dispute in arbitration and in a judicial forum. 219 N.J. at 442-44, 99 A.3d 306.
Where Atalese discussed the distinction between resolving suits in arbitration versus a judicial forum, here, the ambiguity that affects the mutuality of assent question focuses on the overall language of this provision and whether the instant plaintiff-consumer fairly should have known that by signing her contract, she was knowingly assenting to arbitration as an exclusive remedy. We think not.
*779 On a macro level, the contract fails to signal to consumers that it contains an arbitration provision affecting their rights because the alternative dispute resolution provision's "arbitration agreement" is located within a section labeled "MEDIATION." Even when located, the small size of the print makes the provision **323 burdensome to read and appears to violate the font size requirements of the PLA.
As for the substance of the provision, its terms are contradictory. The internal sentences refer to the use of the AAA's Commercial Mediation Rules, which cannot be reconciled with arbitration. The provision's terms cannot be read to provide clarity to a consumer that she was agreeing to arbitration, or what that term, in the context of confusing references to mediation or mediation rules, actually meant. Indeed, mediation and arbitration are distinct and different procedures.
Under N.J.S.A. 2A:23C-2, mediation is "a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute." As a facilitator, a mediator does not reach a final decision on the matter. Instead, the mediator, albeit remaining neutral, encourages the participants to resolve their differences and reach an agreement. See R. 1:40-2(c) (" 'Facilitative Process,' which includes mediation, is a process by which a neutral third party facilitates communication between parties in an effort to promote settlement without imposition of the facilitator's own judgment regarding the issues in dispute."). Mediation sessions "are not conducted under oath, do not follow traditional rules of evidence, and are not limited to developing the facts." State v. Williams, 184 N.J. 432, 447, 877 A.2d 1258 (2005) (quoting Rinaker v. Superior Court, 62 Cal. App. 4th 155, 162, 74 Cal.Rptr.2d 464 (1998) ). Mediation communications are privileged under N.J.R.E. 519 because honesty in communications is imperative in order to reach a settlement. Public policy favors settlement of disputes in part because it "spares the parties the risk of an adverse outcome and the time and expense -- both monetary and emotional -- of protracted litigation." Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 253-54, 71 A.3d 888 (2013) (citing Williams, 184 N.J. at 441, 877 A.2d 1258 ). Of utmost importance, if mediation sessions fail, the parties can proceed in court to resolve their dispute.
**324 On the other hand, "[t]he object of arbitration is the final disposition, in a speedy, inexpensive, expeditious, and perhaps less formal manner, of the controversial differences between the parties." Hojnowski v. Vans Skate Park, 187 N.J. 323, 343, 901 A.2d 381 (2006) (citation omitted). Arbitration involves a process that results in an adverse outcome for one party. See Williams, 184 N.J. at 447, 877 A.2d 1258 (stating goal of both formal adjudication and arbitration "is to uncover and present evidence of claims and defenses in an adversarial setting").
Unless superseded by the parties' agreement, the New Jersey Arbitration Act prescribes the rules governing the conduct of the proceeding. See N.J.S.A. 2A:23B-4 ; Fawzy v. Fawzy, 199 N.J. 456, 469-70, 973 A.2d 347 (2009). The Act grants an arbitrator significant discretion over evidentiary matters in order to advance the goal of quick and fair disposition of the parties' dispute. See N.J.S.A. 2A:23B-15. The "arbitrator's role is evaluative, requiring the parties to present their evidence for a final determination." Minkowitz v. Israeli, 433 N.J. Super. 111, 144, 77 A.3d 1189 (App. Div. 2013) (citing R. 1:40-2(b)(2) ). Much like a judicial factfinder, "[a]rbitrators essentially weigh evidence, assess credibility, and apply the law *780 when determining whether a party has proven his or her request for relief." Ibid.
In sum, mediation stands in "stark contrast" to formal adjudication and arbitration. Williams, 184 N.J. at 447, 877 A.2d 1258.
C.
As noted, defendants initially petitioned asking this Court to hold that our decision in Atalese runs afoul of Kindred Nursing-- an argument now abandoned. Even if defendants maintained that argument, we would not need to address any perceived conflict between those cases because the threshold issue of whether the instant provision's language contains sufficient clarity to form any agreement about arbitration is easily answered. This provision does not meet the rudiments for showing a mutual assent to have arbitration be the only means of dispute resolution permitted to **325 plaintiff, necessarily foreclosing her from pursuing her right to bring an action in court.
"To be enforceable as a contractual undertaking, an agreement must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty." Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 24-25, 138 A.2d 402 (1958) (citing Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531, 126 A.2d 646 (1956) ). The shortcomings of the provision in issue here are, as noted, three-fold: (1) the inconspicuous location of the agreement to arbitrate under a section labeled "MEDIATION"; (2) its small-font text and confusing ordering of sentences; and (3) the invocation of the Commercial Mediation Rules.
As noted, mediation and arbitration are "distinctly different proceedings." Minkowitz, 433 N.J. Super. at 146, 77 A.3d 1189. Yet, the provision's terms blur any distinction. To the extent a lay reader perceives that there are two procedures being proposed through this confusing alternative dispute resolution provision labeled "MEDIATION," the provision's discussion of the arbitration process is misleading. An arbitration provision that purports to utilize mediation procedures is unenforceable because the parties cannot be said to have reached a meeting of the minds on whether the proceeding will result in a binding award. Here, if a court were to compel arbitration pursuant to the provision's terms, there would be no binding resolution of the parties' disputes. Although arbitration by definition involves the issuance of a final award by a neutral third party, see R. 1:40-2(a)(1), the references to arbitration in defendants' provision lack sufficient clarity to preclude resort to judicial relief should the parties' good-faith settlement negotiations fail.
Despite the title "MEDIATION," the bold-faced text that follows prescribes a two-step dispute resolution process: "The parties agree to mediate in good faith before resorting to mandatory arbitration in the State of New Jersey." The provision does not **326 next outline the scope of the proceedings, but instead first includes a waiver of class proceedings. The provision then prescribes that
[a]ny and all disputes, claims and causes of action arising out of or connected with this Agreement (including but not limited to whether a particular dispute is arbitrable hereunder) shall be resolved exclusively through the American Arbitration Association in the state of New Jersey under its Commercial Mediation Rules. Controversies or claims shall be submitted to arbitration regardless of the theory under which they arise, including without limitation contract, tort, *781 common law, statutory, or regulatory duties or liability.
[ (emphasis added).]
The provision seemingly envisions the issuance of an award. In the third subsection, the provision limits "[a]ny and all claims, judgments and awards" to "actual out-of-pocket costs incurred to a maximum of $1500 per claim." (emphasis added). The final subsection dictates that "[u]nder no circumstances will you be permitted to obtain awards for, and you hereby waive[ ]," any other form of damages and multiplied damages. (emphasis added).
Reading the provision as a whole, the references to arbitration cannot be harmonized with the title of the section and the intended use of the Commercial Mediation Rules in order to give rise to an enforceable agreement to arbitrate. Should a diligent and prudent consumer read defendants' form contract in full, a reader could, and most likely would, reasonably understand subsection two to prescribe that the Commercial Mediation Rules "exclusively" govern "any and all disputes." The small typeface, confusing sentence order, and misleading caption exacerbate the lack of clarity in expression. It is unreasonable to expect a lay consumer to parse through the contents of this small-font provision to unravel its material discrepancies.
Our Plain Language Act requires that more be done in the setting of consumer contracts to make them understandable for a lay person. See N.J.S.A. 56:12-10(b)(3) (prescribing, for consumer contracts, that "[c]onditions and exceptions to the main promise of the agreement shall be given equal prominence with the main promise, and shall be in at least 10 point type"); see also Morgan, 225 N.J. at 310 n.8, 137 A.3d 1168 (noting that in judging whether consumer contract meets standard of being written in clear and **327 understandable manner, "courts must 'take into consideration the guidelines set forth in [ N.J.S.A. 56:12-10 ]' " (alteration in original) (quoting N.J.S.A. 56:12-2 ) ).
Because the contract contains material discrepancies that call into question the essential terms of the purported agreement to arbitrate, mutual assent is lacking. Accordingly, we hold that this arbitration agreement is not enforceable.
V.
The judgment of the Appellate Division is affirmed as modified.
CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate, concurring opinion.

Plaintiff secured that portion of her relief by notifying defendants of her claim, as the alternative dispute resolution provision requires. The defendants agreed to the cancellation and refunded plaintiff the full purchase price to her credit card a few days later.

We note that plaintiff filed an amended complaint before the trial court later during the proceedings, in which she alleged additional evidence of asserted wrongful conduct and harm suffered by plaintiff.

As discussed infra in Section III. B. 1., in Kindred Nursing, the Supreme Court reviewed a Kentucky Supreme Court holding that required an explicit statement in a power of attorney agreement to the effect that the attorney-in-fact has authority to waive the principal's state constitutional rights to access the courts and to a jury trial (its "clear-statement rule").See generally Kindred Nursing, 137 S.Ct. at 1421-29. The Supreme Court concluded that the Kentucky Supreme Court's holding contravened the FAA because, by imposing an extra hurdle to enforcement of an arbitration agreement, the Kentucky ruling failed to keep arbitration agreements on equal footing with other contracts. Id. at 1426-27.

Defendants concede that the font is less than 10 point, as required by the PLA, but do not know its actual size and so cannot agree to the size asserted by the NJAJ.

In light of sections three (providing for a stay of litigation pending arbitration "in accordance with the terms of the agreement") and four of the FAA, the Supreme Court has "held that parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." Concepcion, 563 U.S. at 344, 131 S.Ct. 1740 (citations omitted) (emphasis in original).

In reversing the Kentucky Supreme Court holding in Kindred Nursing, the Supreme Court concluded that Kentucky "did exactly what Concepcion barred: adopt a legal rule hinging on the primary characteristic of an arbitration agreement -- namely, a waiver of the right to go to court and receive a jury trial." Id. at 1427. The Supreme Court called the Kentucky rule "too tailor-made to arbitration agreements -- subjecting them, by virtue of their defining trait, to uncommon barriers -- to survive the FAA's edict against singling out those contracts for disfavored treatment." Ibid.