**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3318-24

PAMELA HERBERT, on behalf
of herself and all others similarly
situated,

    Plaintiff-Respondent,

v.

OCEANFIRST BANK,

    Defendant-Appellant.

_____

Argued December 16, 2025 – Decided January 28, 2026

Before Judges Gooden Brown and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1571-24.

Eric T. Werlinger (Kattan Muchin Rosenman LLP) of the District of Columbia, Commonwealth of Virginia, and Texas bars, admitted pro hac vice, argued the cause for appellant (Brown & Connery, LLP and Eric T. Werlinger, attorneys; Joseph M. Garemore, Stuart M. Richter (Kattan Muchin Rosenman LLP) of the California, Montana and Wyoming bars, admitted pro hac vice, and Eric T. Werlinger, on the briefs).

Vess A. Miller (CohenMalad, LLP) of the Indiana and California bars, admitted pro hac vice, argued the cause for respondent (Weitz & Luxenberg, PC and Vess A. Miller, attorneys; James K. Bilsborrow and Vess A. Miller, on the brief).

PER CURIAM

Defendant OceanFirst Bank appeals from a May 13, 2025 Law Division order denying its motion to compel arbitration of the class action claims brought against it by plaintiff, Pamela Herbert, defendant's banking customer. OceanFirst contends the trial court erred in finding unenforceable an arbitration provision OceanFirst added to the parties' previously jointly-executed account agreement without express acceptance by plaintiff. The court found the parties' initial account agreement required any changes be made by "written agreement properly executed" by both parties, which OceanFirst failed to secure when it shifted the onus to plaintiff to actively decline the new arbitration provision or assent by her silence after providing notice solely by an insert in her monthly account statement. Accordingly, the court deemed the arbitration provision unenforceable as OceanFirst violated the initial agreement by imposing an arbitration requirement without proof of mutual assent. After review of the record under applicable legal principles, we affirm.

I.

A.  <u>The Initial Agreement and the Subsequent Arbitration Provision</u>

On May 18, 2013, plaintiff opened a checking account with OceanFirst subject to the parties' written account agreement.  The first two paragraphs of the section entitled "account agreement" provided:

> GENERAL - . . . This Agreement and the documents to which it refers constitute our entire agreement and understanding and supersede all prior agreements and understandings.  <u>This Agreement may only be changed by written agreement properly executed by you and us and may not be changed orally</u>.
>
> TERMS - When you open a deposit account with us by signing a Signature Card, you are agreeing to the terms of this Agreement, the General Terms and Conditions Savings and the Fee Schedule as amended from time to time.  The terms in this Agreement and the General Terms and Conditions constitute a legally binding contract.  Please note that the contract <u>can only be modified as provided in the Agreement</u>.  Furthermore, the account(s) will be subject to the laws, rules and regulations of the State of New Jersey and of the United States.  Any changes in any of the foregoing that may become effective in the future will also govern the account.
>
> [(Emphasis added).]

Several paragraphs later, the agreement provided:  "AMENDMENTS - We may amend the terms of this Agreement <u>at any time by sending you written</u>

<u>notice</u> at the most current address listed in our records before the change in terms is to take place." (Emphasis added).

In 2014, OceanFirst attempted to add an arbitration provision to its agreements by a written insert in its customers' February or March monthly account statements, via mail through "a third-party vendor." OceanFirst maintained plaintiff's notice would have been included in her March 2014 statement.

The notice contained an agreement to arbitrate claims related to the account and a waiver of any right to bring individual or class action claims in court. Specifically, the arbitration provision read:

> ARBITRATION AGREEMENT
>
> This document contains important information concerning your account(s). Please read it carefully. Your Account Agreement(s) are being amended to include the following Arbitration Agreement. This amendment applies to all Account Agreements. If you do not want this Arbitration Agreement to apply, you have the right to reject it under the section called, "Right to Reject," below.
>
> . . . .
>
> Each of you and OceanFirst agree that any controversy or claim arising out of or relating to your account(s), this Agreement or any breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules . . . . Except as provided

4

in the following sentence, to the fullest extent permitted by law, each of you and OceanFirst agree to waive its rights (1) to seek remedies in court, including any right to a jury trial; and/or (2) to participate in a class action or to join or consolidate claims with claims of any other person either in court or through arbitration. Nothing contained herein shall restrict either party from seeking temporary injunctive relief in a court of law or filing matters in Small Claims Court.

[(Emphasis omitted).]

The notice included the following "opt-out" language:

RIGHT TO REJECT - If you do not want this Arbitration Agreement to apply, you may notify us by contacting your local Branch calling Retail Customer Services at [(phone number and extension)] or by email to righttoreject@oceanfirst.com within [thirty] days of receipt of this document. The rejection notice must include your name and account number(s) and tell us that you are rejecting the Arbitration Agreement.

OceanFirst did not present proof of mailing specifically to plaintiff, and confirmed plaintiff never contacted the Bank to object to the change. Plaintiff certified she never saw the notice, had no reason to believe she ever received it, and never agreed to arbitrate or forego her right to bring suit in court, nor would she if properly advised of the proposed forum change. It was undisputed OceanFirst's records reflected plaintiff's correct mailing address and account notices, new debit cards, and other mailings were sent to plaintiff at that address on many occasions.

B.  <u>Motion to Compel Arbitration</u>

In June 2024, plaintiff filed a Class Action Complaint with jury demand alleging, on behalf of herself and the class, breach of contract, unjust enrichment, and Consumer Fraud Act[1] violations.  The substantive claims, immaterial to our narrow procedural considerations here, arose from overarching allegations OceanFirst improperly charged multiple fees to plaintiff and "thousands of other[]" customers, making "substantial" unearned profit.  In the fall of 2024, OceanFirst moved to compel arbitration, seeking to enforce the arbitration provision as a permissible unilateral amendment under the initial agreement, made on written notice to plaintiff without objection.  Plaintiff contended the arbitration provision constituted a material change to the initial agreement which could only be made by written agreement executed by the parties.

Two months later, the court held oral argument and noted the tension between the two provisions in the parties' initial account agreement, describing it "[wa]s clearly weird that in one sentence, [OceanFirst] sa[id] that any amendment has to be executed by the parties and then in a sentence later, [it] sa[id], 'That's not true, we can amend anything by simply sending you notice.'"

---

[1]  N.J.S.A. 56:8-1 <u>et seq.</u>

A-3318-24

The court then denied the motion without prejudice to allow for limited discovery to further explore "some issues of fact" regarding the enforceability of the arbitration provision.

Discovery was exchanged, and plaintiff was deposed on the narrow issue of the arbitration provision. She reiterated she never saw, nor to her knowledge received, any notice regarding the arbitration provision, and would have objected if she had. She confirmed receiving written monthly statements and items such as debit cards in the mail from OceanFirst over the course of the banking relationship. She described what she considered to be "[a]dvertising offers" often included with her monthly statements. She also indicated she received written notices about overdrafts in the mail from OceanFirst.

OceanFirst offered a certification from an operations manager, explaining, only generally, the Bank's regular business practice of sending notices and statements through a third-party mailer to "the mailing address on file with the Bank." The manager attached proof of two notices from the Bank appearing to have been sent to plaintiff's mailing address in 2021 and 2022, but provided no specific information related to mailing any notice to plaintiff of the 2014 arbitration provision.

The manager's certification provided only that the notice of arbitration agreement "change was reflected in a standalone change of terms notice, which was sent by OceanFirst's third-party vendor Fidelity Information Services (FIS) with customers' February 2014 or March 2014 account statements, depending upon the customer's statement cycle." The manager represented, without any further detail, the notice was cut and inserted with the statement mailings, and "[b]ased on OceanFirst's regular business practice," plaintiff's March 2014 statement was sent to her home. The manager clarified OceanFirst's practice when a customer "opted out" of the arbitration provision was to "place[] an indicator on the customer's account reflecting the customer had rejected the [a]rbitration [p]rovision." Records of plaintiff's account reflected no opt-out indication.

A short certification from a representative of the Bank's third-party mailer confirmed in 2014 OceanFirst "contracted [with FIS] to mail account statements, inserts to those statements, and certain other documents to OceanFirst customers." The FIS representative further certified the company "regularly mailed inserts on [defendant's] behalf" and attached to the certification general internal instructions for "fulfilling" any mailing services for OceanFirst. No corresponding addresses, mailing lists, or proof of notification to specific

A-3318-24

customers were provided regarding any OceanFirst mailings; nor was there any mention of the 2014 arbitration mailing specifically to plaintiff, or even generally to customers.

Thereafter, OceanFirst again moved to compel arbitration, reprising its earlier arguments. OceanFirst argued: (1) arbitration agreements must be treated as any other contract amendment which may be amended on notice by one party and failure to "opt out" by the other; (2) "banks make changes to their agreements constantly [because] [t]hey're required by law" to do so, and "[i]f they have to get a signature every time an account is changed, it's just not workable"; (3) the initial account agreement's "specific" amendment-by-notice provision controls over the "general" paragraph requiring changes be made in writing and executed by the parties; and (4) plaintiff manifested her assent by continuing to utilize her account for years after the notice.

OceanFirst's counsel emphasized plaintiff admitted to receiving her monthly bank statements in the mail. In response, the court noted, "99.99999[%] of people only look at the statement where it relates to the numbers, the money in their account itself[.] . . . In fact, if I brought it, they even have notices of how much charitable work they do and stuff like that. Nobody reads that." The court

added OceanFirst could have sent the arbitration provision "outside of th[e] statement saying, 'We're changing your agreement. We need you to sign this.'"

Plaintiff argued: (1) OceanFirst presented no "firsthand" proof of specific mailing of the arbitration provision to her and plaintiff never saw it and believed she "never received it"; (2) regardless, the notice by "bill[-]stuffer" was insufficient and easily disregarded as "junk at the end of the statement"; (3) the arbitration provision is unenforceable because the account agreement required any change be made in writing and executed by the parties; and (4) any conflicting provisions in the initial agreement must be construed against OceanFirst as the drafter.

The court denied the motion to compel arbitration, finding the arbitration provision unenforceable for lack of assent. The trial court gave force to the initial account agreement's language requiring any change be made in writing and executed by the parties. The court viewed the contract language, applying "rules of common sense," and stated:

> When I read . . . where it says change by . . . written agreement properly executed, common sense leads me to believe that you have to execute a document, not – it's not talking about performance. It's talking about signing an agreement. To me, it's so clear and it's for the court to interpret documents. That's on me. That wouldn't go to a [j]ury.

A-3318-24

The trial court then reconciled the first paragraph with the subsequent "amendments" language. Rejecting OceanFirst's claim the amendments provision was more specific and controlled the analysis, the court found the two provisions could be "read consistently." Specifically, the court explained:

> One paragraph talks about changes. One paragraph talks about amendments. How do we make sense of that? Well, this agreement, original agreement, had a lot of terms in it. Those terms can be amended. You have an interest rate. I want to amend that interest rate. I send you notice of that. Adding a term that wasn't in there to begin with is a change, not an amendment. That's what the [c]ourt finds.
>
> Consequently, to add -- an arbitration agreement that wasn't in there to begin with, you had to have her sign for that change.

Thus, in these circumstances, the court found "no enforceable arbitration agreement." Deciding the motion on that basis, the court declined to address the sufficiency of notice or receipt by plaintiff.

II.

On appeal, OceanFirst argues the court erred in finding the arbitration provision unenforceable because (1) the added arbitration agreement was a proper "amendment" under the initial account agreement effectuated through notice and an "opportunity to opt out," and the initial agreement's "no oral modification clause is just a general contract term . . . [and] does not create a

11

A-3318-24

second pathway for revising the contract separate and apart from the amendment provision"; (2) "execute" does not mean "sign," and plaintiff "executed" the arbitration agreement by continuing to do business and not "opting out"; and (3) requiring signatures to banking account amendments would result in "chaos."

OceanFirst next contends, although the court made no findings regarding actual notice to plaintiff, should we determine notice of the arbitration agreement by mail did not alone render the arbitration provision unenforceable, we must conclude plaintiff received sufficient notice of the arbitration provision. It asserts the record presumptively establishes notice, and "plaintiff failed to rebut a presumption of receipt." Finally, OceanFirst argues plaintiff's failure to opt out on sufficient notice, coupled with her continued use of the account constituted "acceptance" of the arbitration provision.

Plaintiff contends the trial court properly found compelling arbitration would violate the initial account agreement, which, read in its entirety, required such a change be made in writing signed by the plaintiff. She argues the court properly reconciled the "execution" requirement with the notice and opt-out provision to reach this conclusion, but contends, even assuming execution by signature was not required, the arbitration agreement is nonetheless unenforceable, as the record does not establish plaintiff received notice of the

12

change. Alternatively, plaintiff contends even assuming proper notice, her assent to arbitration cannot be properly derived from silence alone.

III.

Like our review of "the enforceability of [any] contract[]," Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)), "[w]e review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law," Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)).

A motion to compel arbitration should be denied if no agreement to arbitrate existed as "[a]n arbitration agreement is valid only if the parties intended . . . to do so." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 317 (2019) (quoting Volt Info. Scis. v. Bd. of Trs., 489 U.S. 468, 478 (1989)) (internal quotation marks omitted). Fundamentally, arbitration is only appropriate "when an agreement exists between the parties to arbitrate." Hirsch, 215 N.J. at 196.

When evaluating the enforceability of arbitration provisions, "courts 'apply ordinary state-law principles that govern the formation of contracts.'"

Cottrell v. Holtzberg, 468 N.J. Super. 59, 69 (App. Div. 2021) (citing Kernahan, 236 N.J. at 307); see also Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 441 (2014). Further, "the proponent of arbitration . . . ha[s] the burden to establish the existence of an agreement to arbitrate between" the parties. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cantone Rsch., Inc., 427 N.J. Super. 45, 59 (App. Div. 2012).

Critically, "[a]n arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48 (citing Atalese, 219 N.J. at 442); see also Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285-86 (App. Div. 2023). As such, "there must be a meeting of the minds for an agreement to exist before enforcement is considered." Skuse, 244 N.J. at 48 (quoting Kernahan, 236 N.J. at 319).

Importantly, "[n]o 'talismanic recitations' are required" for mutual assent. Cottrell, 468 N.J. Super. at 70 (quoting Kernahan, 236 N.J. at 320). "Mutual assent requires that the parties have an understanding of the terms to which they agreed." Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 425 (App. Div. 2020) (quoting Atalese, 219 N.J. at 442). "Thus, [i]n the absence of a consensual understanding, neither party is entitled to force the other to arbitrate."

14

Capparelli v. Lopatin, 459 N.J. Super. 584, 610 (App. Div. 2019) (alteration in original) (quoting Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 271 (App. Div. 2000)) (internal quotation marks omitted). Both parties must have "clearly and unambiguously" agreed. Atalese, 219 N.J. at 443.

"[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent,'" with the specific purpose of "assur[ing] that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 498 (App. Div. 2021) (first quoting Atalese, 219 N.J. at 442-43; then quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). It is crucial that the parties must "have full knowledge of [their] rights" and show an "intent to surrender those rights." Atalese, 219 N.J. at 442-43.

A.

Against this backdrop, we first consider OceanFirst's argument the court erred in finding enforcement of the arbitration provision would violate the terms of the parties' initial account agreement. Analyzing the contracts "under the familiar rules of contract interpretation," Serico v. Rothberg, 234 N.J. 168, 178

15

(2018), we conclude, as did the trial court, the arbitration provision is unenforceable.

"A basic tenet of contract interpretation is that contract terms should be given their plain and ordinary meaning." Kernahan, 236 N.J. at 321. Courts must "read the document as a whole" and "give a faithful and logical reading to the words chosen by the parties to the agreement." Boyle v. Huff, 257 N.J. 468, 478 (2024) (first quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009); then quoting GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 183 (2017)). Further, "a specific, defined term controls a general, undefined term[,]" Gil v. Clara Maass Med. Ctr., 450 N.J. Super. 368, 378 (App. Div. 2017), and any ambiguity "should be construed against the drafter because . . . the drafter . . . chose the words," Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 224 (2011)).

Here, the express terms of the initial account agreement unambiguously stated the agreement "may only be changed by written agreement properly executed by [both parties] and may not be changed orally." (Emphasis added). We are not persuaded the agreement's later provision stating OceanFirst "may amend th[e] [a]greement . . . by sending you written notice at the most current

address . . . before the change in terms is to take place" supplanted the contract's earlier clear execution requirement governing any changes to the agreement.

Here, OceanFirst, the drafter of its agreements with its customers, intentionally chose to mandate that changes could "only" be made in one manner—by written, not oral agreement, properly executed. This specific choice of unambiguously precise and restrictive language undermines OceanFirst's claim the provision is "general" and broad, and consequently subordinate to the later amendment-on-notice language in the agreement. We are thus unable to conclude the amendment provision somehow negated or rendered superfluous the agreement's deliberate and specific requirements for changing the contract.

The trial court fairly reconciled the amendment provision as applicable to only modification of certain existing terms, such as interest rates, not to the addition of new terms of magnitude, such as mandating the forum for dispute resolution and terminating a customer's constitutional right to access to courts. We further note the amendment provision's plain language simply provided OceanFirst "may amend" via advance written notice to the customer's "most recent address," which could, as plaintiff suggests, be read to add a requirement, not remove one.

A-3318-24

We can derive no fair interpretation of the "written" and "executed" language, even taken together with the remaining agreement provisions, which would allow lawful imposition of a wholly new arbitration term by means of unilateral written notice by mail. See Discover Bank v. Shea, 362 N.J. Super. 200, 209, 215 (Law Div. 2001) (finding unenforceable an arbitration agreement a bank sought to unilaterally add to its account agreement by "bill stuffer" in customer's monthly statement); Badie v. Bank of Am., 79 Cal. Rptr. 2d 273, 287-89 (Cal. Ct. App. 1998) (invalidating an arbitration agreement imposed via "bill stuffer," reasoning, "permitting the Bank to exercise its unilateral rights under the change of terms provision, without any limitation on the substantive nature of the change permitted, would open the door to a claim that the agreements are illusory").

Further, any claim by OceanFirst of "chaos" resulting from this interpretation is speculative and any risk flows directly from OceanFirst's unilaterally-chosen language. See GMAC Mortg., LLC, 230 N.J. at 185-86 (holding "[the drafter] cannot complain about the language it penned" and "[w]e cannot 'rewrite a contract for the parties better than or different from the one they wrote for themselves'" (quoting Kieffer, 205 N.J. at 223)).

18                                                                        A-3318-24

Moreover, even if the provisions cannot be harmonized, they create an ambiguity, requiring, in these circumstances, construction in favor of plaintiff. See Pacifico v. Pacifico, 190 N.J. 258, 267 (2007) (in situations of unequal bargaining power, "[w]hen a contract term is ambiguous, th[e] rule[s] of contract interpretation require[] a court to adopt the meaning that is most favorable to the non-drafting party . . . after a court has examined the terms of the contract, in light of the common usage and custom, and considered the circumstances surrounding its execution" (citing 5 Corbin on Contracts § 24.27 (Perillo ed., rev. ed. 1998))). Plainly, plaintiff was not on equal footing in the creation of the initial account agreement or any later arbitration agreement with OceanFirst. Thus, the inexorable conclusion remains—the addition of an arbitration agreement was required to be made "by written agreement" and "properly executed" by the parties and could not be made by unilateral mailing and "opt-out" notice inserted with a monthly statement.

## B.

In applying the contract's requirements, we similarly reject OceanFirst's claim its use of the term "executed" did not mean "signed." Although the word "executed" is open in certain circumstances to an alternative meaning, such an interpretation does not lend itself here.

We have previously recognized "[a]n executed document is one that has been signed." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Tax'n, 414 N.J. Super. 453, 465 (App. Div. 2010) (internal quotation marks omitted). Indeed, "signed" is a primary definition of the legal term "executed." See Black's Law Dictionary 712 (12th ed. 2024) (defining the term "executed" first as a "a document[] that has been signed"). A varying definition provides execution may occur when something "has been done, given, or performed." Ibid.

Placed in clear context here, however, we can only conclude the initial agreement's language mandating changes occur via "written agreement properly executed" required a signature, as interpreting "executed" as meaning by conduct or performance ignores the surrounding language and purpose of the provision. Most significantly, it overlooks and negates the companion requirement that any change be made by written, not oral, agreement by both parties. OceanFirst's claims to the contrary lack merit upon a plain reading of its agreement.

Nevertheless, even if we were to accept for purposes of argument that a change to the initial agreement could be "executed" without a signature, sufficient proof of notice and assent to the new provision would be required. OceanFirst contends it established sufficient notice to plaintiff. For

20

completeness, we have considered this, and OceanFirst's remaining arguments, which likewise fail.

Significantly, assuming no signature requirement existed, the parties' initial account agreement made no mention of an opt-out procedure for unilaterally imposed changes, such as the one utilized by OceanFirst to notify plaintiff it was imposing an arbitration requirement. Thus, the initial agreement never advised or placed plaintiff on notice her failing to affirmatively object to or decline OceanFirst's changes to her agreement would functionally suffice as her affirmative assent to their imposition.

We recognize generally "mutual assent . . . can be prove[n] by an explicit agreement to modify, or . . . by the actions and conduct of the parties, so long as the intention to modify is mutual and clear." Elliott & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 322 (3d Cir. 2006) (second omission in original) (quoting Cnty. of Morris v. Fauver, 153 N.J. 80, 99 (1998)) (internal quotation marks omitted). However, while "conduct can constitute contractual assent," Skuse, 244 N.J. at 50 (an employee agreed to arbitration when she clicked "CLICK HERE to acknowledge"), "[s]ilence does not ordinarily manifest assent" to an agreement, Weichert Co. Realtors v. Ryan, 128 N.J. 427, 436 (1992). "A proposed modification by one party to a contract must be accepted

by the other to constitute mutual assent to modify" and one-sided "actions made after an agreement has been reached or [statements] added to a completed agreement [do not] . . . modify the original terms of a contract, especially where the other party does not have knowledge of the changes, because knowledge and assent are essential to an effective modification." Cnty. of Morris, 153 N.J. at 100.

We cannot conclude the initial account agreement, silent as to arbitration or dispute resolution forum, placed plaintiff on notice she might be compelled to abdicate her right to sue in court, individually or as part of a class, and arbitrate any future claims without her affirmative assent by simply failing to "opt out." "An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." Wollen, 468 N.J. Super. at 498 (citing Hoffman v. Supplements Togo Mgmt., LLC, 419 N.J. Super. 596, 609 (App. Div. 2011)) (internal quotation marks omitted). We are unpersuaded plaintiff was on sufficient notice of or accepted an "assent-by-opt-out" alternative to affirmative assent to arbitrate her claims.

Here, although the trial court did not reach the issue of notice, OceanFirst invites us to conclude its 2014 mailing properly notified plaintiff of the new arbitration agreement and the requirement that she could "opt out" to reject it,

22

rendering the arbitration agreement enforceable. Again, we do not agree the initial agreement allowed for imposition of an arbitration agreement by operation of plaintiff's inaction on mailed notice. Nonetheless, accepting OceanFirst's invitation to assess whether it established presumptive receipt by plaintiff of its notice of arbitration agreement, we are not convinced.

We have long "recognized a presumption that mail properly addressed, stamped, and posted was received by the party to whom it was addressed." SSI Med. Servs. v. HHS, Div. of Med. Assistance & Health Servs., 146 N.J. 614, 621 (1996). In order to benefit from the "presumption that mail properly addressed, stamped, and posted was received by the party to whom it was addressed," the proponent must show "(1) that the mailing was correctly addressed; (2) that proper postage was affixed; (3) that the return address was correct; and (4) that the mailing was deposited in a proper mail receptacle or at the post office." Ibid. OceanFirst, relying on sweepingly general evidence of its routine practice and custom, failed to make a sufficient showing.

Crucially, "evidence of office custom alone is insufficient to trigger the presumption of mailing and receipt." Id. at 622. "Evidence of office custom requires other corroboration that the custom was followed in a particular

23

instance, in order to raise a presumption of mailing and receipt and meet the preponderance of the evidence standard." Id. at 622-23.

OceanFirst established plaintiff's account records reflected her correct address, defendant's address was routinely used as the return address on account statements sent via third-party mailer, and plaintiff admitted she received other OceanFirst mailings at her home. However, OceanFirst failed to present any specific evidence pertinent to this particular mailing to plaintiff. We note the sparse two-page certification of the third-party mailer's representative lacked any specificity to the general mailing of the arbitration provision to customers or the specific mailing to plaintiff. Records of unrelated notices mailed to plaintiff's address roughly seven years later add no probative value. Without so much as a mailing list including plaintiff among intended recipients of the new arbitration agreement, there can be no viable argument OceanFirst surmounted the threshold for establishing plaintiff's presumptive receipt.

Accordingly, there can be no fair conclusion plaintiff lawfully assented to the unilaterally-imposed arbitration requirement and waiver of class action by failing to opt out of a provision about which she had no proven notice. To the extent we have not addressed any remaining arguments raised by defendant, we

24

have determined they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

25