**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5635-18T1

AUGUST BARTZ and
LAURA BARTZ,

       Plaintiffs-Respondents,

v.

WEYERHAEUSER COMPANY,
SCHAEFFER FAMILY HOMES, LLC,
SCHAEFFER CONSTRUCTION, LLC,
and DAYSTAR CONSTRUCTION, LLC,

       Defendants-Appellants.

_____

Argued telephonically May 7, 2020 –
Decided August 26, 2020

Before Judges Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4736-18.

Scott P. Martin (Perkins Coie, LLP) of the Washington bar, admitted pro hac vice, argued the cause for appellants (Scott P. Martin and Daniel P. Ridlon (Perkins Coie, LLP), of the Washington bar, admitted pro hac vice, and Duane Morris, LLP, attorneys; Scott P. Martin and Daniel P. Ridlon, Patrick Kearney, Trevor H. Taniguchi, and Andrew R. Sperl, on the brief).

David J. Novack argued the cause for respondents (Marin Goodman, LLP, attorneys; David J. Novack, on the brief).

PER CURIAM

Defendants Weyerhaeuser Company, Schaeffer Construction LLC, Schaeffer Family Homes LLC, and Daystar Construction LLC[1] (defendants) appeal the August 2, 2019 order that denied their motion to compel binding arbitration of the claims made by plaintiffs August and Laura Bartz arising from the construction of a new home. We affirm the order because the arbitration clause lacked mutuality of assent, rendering it unenforceable.

## I.

In April 2016, plaintiffs contracted with defendant Schaeffer Construction LLC (Schaeffer) to construct their new home. The April 15, 2016, Construction Agreement between plaintiffs and Schaeffer included an arbitration clause at paragraph 21.

> Any controversy or claim arising out of or related to this Agreement, or the breach thereof, or any dispute relating to an alleged event of Default shall be resolved by arbitration subject to the terms and conditions set forth herein . . . . The arbitration, any litigation and all proceedings relating thereto shall take place at a location . . . as selected by the Arbitrator or venued in the Superior Court . . . . The arbitration shall be conducted in

---

[1] Defendants Schaeffer Family Homes, LLC and Daystar Construction, LLC are affiliates of Schaeffer Construction (collectively referred to as "Schaeffer").

accordance with the Commercial Arbitration Rules of the American Arbitration Association as modified herein. The Arbitrator shall resolve disputes as to what can be arbitrated and the validity of the arbitration clause . . . . The Arbitrator . . . shall not have the power to make a legally erroneous award . . . . The decision and award rendered by the Arbitrator shall be final.

Plaintiffs and Schaeffer signed an addendum to the Construction Agreement (Addendum) on May 14, 2016, which provided:

Buyers and Seller re-iterate their intention to use Binding Arbitration in the event of any dispute arising out of the Agreement of Sale, as noted in the Arbitration Clause attached to the said Agreement as page 5 and signed by the Parties.

Plaintiffs allege the wooden floor joists used to support the new house were "TJI Joists with Flak Jacket Protection" for fire resistance manufactured, marketed, sold and distributed by defendant Weyerhaeuser. They claim these joists "emit[ted] noxious and toxic gases that are harmful to humans[,]" and "'off-gass[ed]' . . . formaldehyde far in excess of acceptable levels" rendering the house "uninhabitable." Plaintiffs assert Schaeffer selected and installed the joists. The formaldehyde smell was present during their walkthrough in June 2017. The Township construction official would not issue a certificate of occupancy.

Schaeffer filed a construction lien against plaintiffs. It also assigned the Construction Agreement and lien claim to Weyerhaeuser, which then filed an

arbitration action against plaintiffs before the American Arbitration Association for the balance of the purchase price owed.

On December 19, 2018, plaintiffs filed a complaint in the Law Division against defendants, alleging causes of action for breach of express warranty (count one); violation of the New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, based on manufacture and design defect (count two), and PLA failure to warn (count three); violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20 (count four); unjust enrichment (count five); and determination the arbitration clause is unenforceable, N.J.S.A. 2A:23B-7 (count six).

Plaintiffs claim they cannot occupy the house because of the joists. Their lender declared a default and commenced foreclosure. Plaintiffs requested damages for costs "associated with removing and replacing the [j]oists," and for any related damages. They also requested a stay of the arbitration proceedings and an award of pre- and post-judgment interest.

Defendants filed a motion to require plaintiffs to arbitrate their claims and to stay the litigation pending arbitration. Plaintiffs argued the arbitration clause was unenforceable, citing Atalese v. United States Legal Services Group, 219 N.J. 430 (2014), because it did not state they "would be waiving their right to pursue their claims in a judicial forum[,]" or that they "waived their right to a trial by jury." Plaintiffs also claimed the arbitration clause font was too small, violating the New

Jersey Plain Language Act (NJPLA), N.J.S.A. 56:12-1 to -13. Plaintiffs argued they never agreed to arbitrate their claims against Weyerhaeuser.

The trial court denied defendants' motion to compel arbitration and the stay on August 2, 2019. The trial court found the arbitration clause failed to satisfy Atalese, which requires the agreement "to be clear," "to be understandable" and "precise." The trial court stated the arbitration clause, "needs to notify the person who [is] giving up their rights, that this is a waiver of a jury trial and provide some type of explanation." It further noted the contract was "in the smallest of fonts," and the arbitration provision "d[id] not stand out from the other numbered paragraphs and d[id not] explain that this is a waiver of a jury trial . . . ." The court found the Addendum did not cure the problem because it also "[did] not make it clear . . . that someone is waiving their right to a jury trial." The court granted a stay pending appeal.

On appeal defendants argue:

> I. THE ARBITRATION PROVISION REQUIRES THE ARBITRATOR RATHER THAN THE TRIAL COURT TO RESOLVE THRESHOLD ARBITRABILITY QUESTIONS[.]
>
> II. THE TRIAL COURT ERRED IN REFUSING TO ENFORCE THE PARTIES' ARBITRATION PROVISION[.]
>
> A. The Arbitration Provision Is Enforceable Under Atalese.

A-5635-18T1

B. The New Jersey Plain Language Act Does Not Render
The Arbitration Provision Unenforceable.

## II.

Defendants appeal the trial court's order that the arbitration provision is not enforceable. They also argue the arbitrator and not the trial court should have decided the arbitrability issue. We review these issues de novo. "Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019).

Agreements to arbitrate are to be treated "upon the same footing as other contracts." Ibid. (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). This is required both by the Federal Arbitration Act (FAA), 9 U.S.C. § 2 and by the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32. Id. at 318-19. They are enforceable unless "grounds . . . exist at law or in equity" to revoke a contract. Id. at 317 (quoting 9 U.S.C. § 2). "[S]tate law governs whether parties to a consumer contract have agreed to arbitrate their disputes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 294 (2016). Therefore, an arbitration provision can be invalidated on grounds that apply to invalidate any contract, but not by grounds that

apply just because arbitration is at issue. Kernahan, 236 N.J. at 317 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).

"An arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'" Ibid. (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). A consumer who accepts arbitration "is surrendering her common-law and constitutional right of access to the courthouse." Morgan, 225 N.J. at 294.

To determine enforceability, courts "apply ordinary state-law principles that govern the formation of contracts." Kernahan, 236 N.J. at 318 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The "initial inquiry" is whether the contract is based on "mutual assent." Id. at 319 (quoting Atalese, 219 N.J. at 442). No "talismanic recitations" are required. Id. at 320 (citing Atalese, 219 N.J. at 445, 447).

These principles stated, defendants contend here that the trial court did not have the authority to resolve the issue of enforceability in the first instance because the arbitration clause empowered the arbitrator, and not the court, to resolve disputes "as to what can be arbitrated and the validity of the arbitration clause."

Defendants made brief reference to this argument in the motion before the trial court, but focused on the enforceability of the agreement, not the trial court's

alleged lack of decision-making authority. The issue was not raised in oral argument before the trial court. Arguably, defendants waived the issue. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (holding "[i]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available . . . .") (quoting Reynolds Offset Co., Inc. v. Summer, 38 N.J. Super. 542, 548 (App. Div. 1959)). Even if the issue were not waived, we reject defendants' argument that the trial court lacked authority to address it.

"[T]he law presumes that a court, not an arbitrator, decides any issue concerning arbitrability." Morgan, 225 N.J. at 304 (citing First Options, 514 U.S. at 944) (providing there must be "clea[r] and unmistakabl[e]" evidence to overcome the presumption that a court will resolve these issues). Unless there is a clear delegation, the "issue is for a court to resolve." Id. at 295-96. Even if there is a delegation clause, it, too, must "satisfy the elements necessary for the formation of a contract under state law." Id. at 295.

These "gateway" questions of arbitrability are "simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce . . . ." Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. ____, 139 S. Ct. 524, 529 (2019) (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70 (2010)). These provisions must "delegate threshold arbitrability questions" with

8                                                                                                    A-5635-18T1

"clear and unmistakable" evidence. Id. at 530 (quoting First Options, 514 U.S. at 944).

Defendants rely on language from the arbitration clause that provides "[t]he [a]rbitrator shall resolve disputes as to what can be arbitrated and the validity of the arbitration clause." We find the issue of enforceability of this arbitration clause should be decided by the court and not by an arbitrator. Plaintiffs expressly challenged the delegation clause. In count six of their complaint, plaintiffs expressly referenced N.J.S.A. 2A:23B-6(b), which provides, "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." We think the reference is sufficient to include a direct challenge to the delegation sentence. In addition, the delegation sentence does not say anything about "enforceability." It was included in the center of the arbitration clause in a font making it difficult to read. It did not explain the import of this delegation. Thus, we find because the language used is not clear and unmistakable about delegating to the arbitrator traditional notions of judicial authority to interpret contracts on the issue of mutuality of assent, we find the issue about enforceability is reserved to the court. See Rent-A-Center, 561 U.S. at 78 n.2 (Stevens, J., dissenting).

Certainly, there is nothing in this arbitration clause to clarify the arbitrator would decide whether legal or statutory issues could be arbitrated, or that the arbitrator would decide whether the entire clause was enforceable based on

A-5635-18T1

mutuality of assent. Thus, it was not explained that once plaintiffs signed this contract, the courts effectively had no role for them in any dispute with Schaeffer until the binding arbitration was over. We do not find this was clear and unmistakable evidence required by Schein.

Defendants argue the trial court erred by not enforcing the arbitration provision. They argue that Atalese was satisfied or alternatively that Atalese violated the FAA.

Atalese involved debt adjustment servicing in a consumer contract which included an arbitration agreement. 219 N.J. at 435. The Court found this unenforceable because it had no "explanation that plaintiff [was] waiving her right to seek relief in a court for a breach of her statutory rights." Id. at 446. To validly waive the right to trial, Atalese held that an arbitration clause must include "in some general and sufficiently broad way, [and] must explain that the plaintiff is giving up her right to bring her claims in a court or have a jury resolve the dispute." Id. at 447. Also, to effectively waive rights, a party must "have full knowledge of [these] legal rights and intent to surrender those rights." Id. at 442 (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). In Atalese, the arbitration clause was not enforceable because it did not explain what arbitration was, how that differed from litigation nor explain to plaintiff she was waiving her right to seek relief in court. Id. at 446-47.

A-5635-18T1

Paragraph 21 of the Construction Agreement here suffers from the same deficiencies. It does not mention waiving the right to trial by jury or the right of access to the courts. It did not clarify that plaintiffs were giving up their ability to have their claims raised in a court of law and have a jury decide the issues. There is no explanation about arbitration or how that differs from proceeding in court. The reference to "litigation" in this section contemplated exactly the issue raised, that certain issues were for the arbitrator and some for the Superior Court. The arbitration clause is not set forth prominently; it is in paragraph 21 and is in a font[2] that is extremely hard to read. The provision that purports to give authority to the arbitrator to resolve enforceability is located in the center of the paragraph without highlighting. There is no indication these broad powers could be operative in an assignment. The Addendum did not cure these problems. It did not address any of the issues that make the clause unenforceable. Because of this the arbitration clause did not satisfy Atalese or Kernahan.

Defendants also argue that the trial court's interpretation of Atalese conflicts with federal law. We reject this. Both Atalese and Kernahan recognize there are no talismanic statements required when evaluating the enforceability of an arbitration

---

[2] Under the NJPLA, a consumer contract should be "easily readable" and written in "at least [ten] point type." N.J.S.A. 56:12-10. The Construction Agreement does not satisfy this as the font is Times Roman 6.5.

clause.  Rather, both cases are tethered to basic contract principles about the lack of mutuality of assent.

To the extent we have not specifically addressed any of defendants' remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION