**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4222-19T4

NAVIGATORS SPECIALTY
INSURANCE COMPANY, as
subrogee of AJD
CONSTRUCTION CO., INC.,

     Plaintiff-Appellant,

v.

JANGHO CURTAIN WALL
AMERICAS CO., LTD.,
SAFEGATE SAFETY
SOLUTIONS, AIG PROPERTY
CASUALTY, INC., and THE
TRAVELERS COMPANY, INC.,

     Defendants,

and

BLADE CONTRACTING, INC.,

     Defendant-Respondent,

_____

Submitted November 16, 2020 – Decided December 9, 2020

Before Judges Messano and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8246-19.

Koster, Brady & Nagler, LLP, attorneys for appellant (Joseph F. Herbert, III, on the briefs).

Langsam Stevens Silver & Hollaender, LLP, attorneys for respondent (Charles M. Adams, on the brief).

PER CURIAM

Plaintiff Navigators Specialty Insurance Company issued a commercial general liability insurance policy to AJD Construction Co., Inc. (AJD), the general contractor for a construction project in Jersey City. AJD hired Jangho Curtain Wall America Companies, Ltd. (Jangho) as a subcontractor on the project, and one of Jangho's employees alleged he was injured at the worksite when he stepped on broken cinder blocks. AJD settled the suit brought by Jangho's employee, and, as AJD's subrogee, plaintiff filed a complaint naming as defendants Jangho, its alleged insurers, the OSHA workplace supervisor hired by AJD, and Blade Contracting Inc. (Blade), the masonry subcontractor AJD hired for the project.

As to Blade, the complaint: sought contractual indemnification (count three); alleged Blade breached the subcontract by failing to procure the required insurance (count five); and, sought declaratory relief for reimbursement of

defense costs and indemnification resulting from the underlying settlement (count six).[1]

After filing an answer, crossclaims and counterclaims, Blade moved to dismiss these three counts, alleging lack of subject matter jurisdiction. Blade argued the contract with AJD contained alternate dispute resolution procedures that required mandatory mediation and arbitration of any claim arising out of the agreement.

Blade's motion was supported by two copies of the contract, which was a form agreement that contained the following language:

> ARTICLE 6   MEDIATION   AND   BINDING DISPUTE RESOLUTION
>
> § 6.1 MEDIATION
>
> § 6.1.1 Any claim arising out of or related to this Subcontract . . . shall be subject to mediation as a condition precedent to binding dispute resolution.
>
>    . . . .
>
> § 6.2 BINDING DISPUTE RESOLUTION
> For any claim subject to, but not resolved by mediation pursuant to Section 6.1, the method of binding dispute resolution shall be as follows:

---

[1]  Plaintiff also sought contribution under the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5, and the Comparative Negligence Act, N.J.S.A. 2A:15–5.1 to -5.8 (count one); common law indemnification (count two); and also alleged Blade breached the implied warranty of requisite skill (count four), and was negligent (count seven).

(Check the appropriate box. If the Contractor and Subcontractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, claims will be resolved by litigation in a court of competent jurisdiction.)

[ ] Arbitration pursuant to Section 6.3 of this Agreement

[ ] Litigation in a court of competent jurisdiction

[ ] Other: (Specify)

§ 6.3 ARBITRATION

§ 6.3.1 If the Contractor and Subcontractor have selected arbitration as the method of binding dispute resolution in Section 6.2, any claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement.

. . . .

§ 6.3.6 This agreement to arbitrate and any other written agreement to arbitrate with an additional persons or persons referred to herein shall be specifically enforceable under applicable law in any court having jurisdiction thereof. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

A-4222-19T4

In the contract Blade contended was the final version: 1) the box indicating the parties selected arbitration was checked; in the other version, no box was checked; 2) the name and title of Blade's secretary/treasurer was hand-printed below his signature; no printed name appeared under the signature in the other version; and 3) the typed-in amount of the subcontract was initialed by representatives of both parties; only AJD's representative's initials appeared in the other version. Blade also included an exchange between its counsel and plaintiff's counsel, in which Blade contended the "metadata" for the two PDF versions of the contract indicated Blade's version was created earlier than the one supplied by AJD's counsel.

In opposing the motion, plaintiff supplied a certification from AJD's project supervisor, Jayanti Patel. Patel stated that AJD's version of the contract was the "true and accurate version of the agreement." He denied ever checking the arbitration "box," claimed he was "[un]aware of anyone from Blade checking this selection[,]" and had not authorized or consented to anyone checking the arbitration provision for AJD. Patel claimed he was familiar with "this standard form contract," and it was his "custom and practice" to leave the arbitration box unchecked. Additionally, plaintiff argued that Blade's version failed to include addenda that were critical to the agreement.

 A-4222-19T4

The Law Division judge considered oral arguments and granted Blade's motion, dismissing counts three, five and six of plaintiff's complaint with prejudice. He ordered plaintiff to submit its claims "to mediation and thereafter, if necessary, to binding arbitration." In a written statement of reasons, quoting Kernahan v. Home Warranty Administrator of Florida, Inc., the judge correctly noted that to be enforceable, an arbitration agreement must be "the product of mutual assent, as determined under customary principles of contract law." 236 N.J. 301, 319 (2019) (quoting Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 442 (2014)). The judge reasoned that only Blade's version of the contract included the "name and title of [its] representative . . . under the signature line[.]" He concluded, therefore, that Blade's version "was the final version of the parties['] agreement."

Citing Atalese, 219 N.J. at 443, the judge further considered "[t]he second prong of the . . . Court's test for enforcing binding arbitration agreements[,]" specifically, whether AJD and Blade "clearly and unmistakably waive[d] their right to adjudicate the[] claim in court." He noted that plaintiff and Blade were sophisticated commercial parties and observed that portions of the form contract were "crossed out" to change the terms of the agreement. However, "no part of the arbitration provision was crossed out" in either version of the contract. The

judge reasoned this failure to excise the alternative dispute resolution provisions reflected AJD's agreement to arbitrate disputes.

Plaintiff appealed as of right. See R. 2:2-3(a) (providing that "any order either compelling arbitration . . . or denying arbitration shall also be deemed a final judgment of the court for appeal purposes").[2] It contends that the judge erred by finding the parties mutually assented to the arbitration provisions because genuine material factual disputes existed regarding differences in the two versions of the contract. It argues that whether either one was the final version of the agreement requires at least limited discovery. We agree.

"De novo review applies when appellate courts review determinations about the enforceability of contracts, including arbitration agreements." Kernahan, 236 N.J. at 316 (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). "Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive." Ibid. (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 302–03 (2016)).

Although "arbitration [i]s a favored method for resolving disputes[] . . . [t]hat favored status . . . is not without limits." Garfinkel v. Morristown

---

[2] Both parties include arguments in their briefs that treat plaintiff's appeal as one seeking leave to appeal an interlocutory order pursuant to Rule 2:5-6(a). We need not address those contentions.

Obstetrics & Gynecology Assocs., PA, 168 N.J. 124, 131–32 (2001). "A court must first apply 'state contract-law principles . . . [to determine] whether a valid agreement to arbitrate exists.'" Hirsch, 215 N.J. at 187 (alteration in original) (quoting Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006)). "This preliminary question, commonly referred to as arbitrability, underscores the fundamental principle that a party must agree to submit to arbitration." Ibid. (citing Garfinkel, 168 N.J. at 132); see also Kernahan, 236 N.J. at 319 ("[A] court's initial inquiry must be — just as it is for any other contract — whether the agreement to arbitrate . . . is 'the product of mutual assent, as determined under customary principles of contract law.'" (quoting Atalese, 219 N.J. at 442)). "[T]he arbitrability analysis is expressly included in the Arbitration Act." Hirsch, 215 N.J. at 187–88 (citing N.J.S.A. 2A:23B-6(b)).

Here, the motion judge decided Blade's version of the contract was the "true and accurate" version because it bore the handwritten name of Blade's secretary/treasurer. However, the judge never addressed the fact that the same individual's signature appears on the version produced by AJD, albeit, without his handprinted name under the signature line. Nor did the judge address the facts contained in Patel's certification, particularly important because Blade offered no certification from its representative in support of the motion, relying only on the two versions of the contract and the email from its counsel.

The judge found further evidence of the parties' intention to arbitrate because although some portions of the agreement were crossed out, the arbitration provisions were not. This ignores, however, the plain language of §6.2 of the agreement, which provided that unless the arbitration box was checked, the parties, by default, agreed to litigate any disputes "by litigation in a court of competent jurisdiction."

To be sure, Blade's claim that its version of the contract was the true final version relied, in part, on assertions obvious from the document itself. Most notably, on Blade's version, the inserted price of the contract was initialed by both parties' representatives; AJD's version only included its representative's initials. Logically, one would assume that the final version of a nearly $2 million contract would include the initials of both parties' representatives next to the amount inserted in the form agreement.

In discussing the issue of arbitrability in <u>Hirsch</u>, the Court cited with approval the Third Circuit's opinion in <u>Guidotti v. Legal Helpers Debt Resolution, LLC</u>, 716 F.3d 764 (3d Cir. 2013). 215 N.J. at 187. In <u>Guidotti</u>, the court extensively considered the standard courts should employ when evaluating motions brought to compel arbitration under the Federal Arbitration Act, 9 U.S.C.A. §§ 1 to 16 (the FAA). <u>Guidotti</u>, 716 F.3d at 771–74. "[W]here the affirmative defense of arbitrability of claims is apparent on the face of a

complaint (or . . . documents relied upon in the complaint), the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery[.]" Id. at 773–74 (alteration in original) (quoting Somerset Consulting, LLC v. United Cap. Lenders, LLC, 832 F. Supp. 2d 474, 481–82 (E.D. Pa. 2011)).

In other instances, "a more deliberate pace is required[.]" Id. at 774. The Court held that the standard applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) was

> inappropriate when either "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity" to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a "naked assertion . . . that it did not intend to be bound" by the arbitration agreement, even though on the face of the pleadings it appears that it did.
>
> [Ibid. (quoting first Somerset, 832 F. Supp. 2d at 482, then Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 55 (3d Cir. 1980), superseded by statute on other grounds, see Stedor Enters. Ltd. v. Armtex, Inc., 947 F.2d 727, 729–30 n.1–2 (4th Cir. 1991)).]

The court concluded that "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the judge should deny the motion and permit "discovery on the question of arbitrability[.]" Id. at 776. "After limited discovery, the court may

entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." Ibid.

In Goffe v. Foulke Management Corp., the Court recognized a limited "place for Guidotti in our arbitration jurisprudence[,]" consonant "with federal case law that allows a court to decide matters that relate directly to the formation of the arbitration agreement." 238 N.J. 191, 216 (2019). The Court noted that "Guidotti['s] summary judgment standard does not apply" when the plaintiff, as did the plaintiff in Goffe, challenges the "contract as a whole rather than the arbitration agreement itself[.]" Ibid.

Here, plaintiff specifically challenges §6.2 of the contract — its arbitration provision — and whether AJD and Blade mutually assented to its terms. Based on the motion record, the issue of mutual assent was incapable of resolution as a matter of law given the genuine, material factual disputes. R. 4:46-2(c). Accordingly, the judge should have denied without prejudice Blade's motion to dismiss, permitted limited discovery on the issue of arbitrability, and entertained a renewed motion to dismiss if appropriately made by Blade at a future date.

We note, and plaintiff seemingly concedes in its brief, that the contract required the parties to mediate their dispute prior to either party invoking §6.2 of the contract, including the default litigation proviso. Therefore, the judge

11

may require the parties to mediate their dispute prior to engaging in any discovery.

Reversed. The matter is remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION