NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3049-23

JOHN LAHOUD,

        Plaintiff-Appellant,

v.

ANTHONY & SYLVAN CORP.,
t/a ANTHONY SYLVAN POOLS,

        Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 6, 2025**
>
> **APPELLATE DIVISION**

Argued January 22, 2025 – Decided February 6, 2025

Before Judges Gilson, Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0967-24.

Joseph M. Cerra argued the cause for appellant (Lynch Law Firm, PC, attorneys; Joseph M. Cerra, on the briefs).

Daniel J. DeFiglio argued the cause for respondent (Archer & Greiner, PC, attorneys; William L. Ryan and Daniel J. DeFiglio, on the brief).

The opinion of the court was delivered by

FIRKO, J.A.D.

This appeal presents a novel issue:  is an alternative dispute resolution (ADR) provision enforceable if the party who drafted the contract reserves the right to file certain claims in court while the other party does not.  Plaintiff John Lahoud appeals from the Law Division's two May 30, 2024, orders granting defendant Anthony & Sylvan Corporation's (A&S) motion to dismiss the complaint and compel arbitration and denying his cross-motion to declare the ADR provision contained in the contract unenforceable and violative of public policy.  Because the ADR provision contains a reservation of rights provision here that is not enforceable, we affirm in part, reverse in part, and remand.

I.

The pertinent facts are gleaned from the motion record and are relatively straightforward.  On January 28, 2023, plaintiff entered into a written contract with A&S to build an in-ground swimming pool at his beachfront home in Mantoloking.  A&S prepared the contract using its own form.  The contract included an ADR clause:

> YOU AND WE AGREE THAT ANY CONTROVERSY, DISPUTE OR CLAIM, INCLUDING BUT NOT LIMITED TO ANY CLAIM FOR CONSUMER FRAUD OR ANY OTHER STATUTORY CLAIM, (COLLECTIVELY "CLAIM") ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT OR ITS BREACH THAT CANNOT BE SETTLED

THROUGH DIRECT DISCUSSIONS SHOULD BE SUBMITTED BY THE CLAIMANT TO NON-BINDING MEDIATION, ADMINISTERED BY A MEDIATOR MUTUALLY SELECTED AND AGREED TO BY THE PARTIES, OR IF THE PARTIES CANNOT AGREE ON A MEDIATOR, BY A MEDIATOR WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") PURSUANT TO ITS COMMERCIAL MEDIATION RULES. MEDIATION MAY PROCEED REMOTELY AT A&S'S OR CUSTOMER'S ELECTION. IF THE PARTIES ARE UNABLE TO RESOLVE THE CLAIM THROUGH MEDIATION, THE CLAIM SHALL BE SUBMITTED BY CLAIMANT FOR AND RESOLVED BY BINDING ARBITRATION PURSUANT TO THE AAA COMMERCIAL ARBITRATION RULES AND ADMINISTERED BY AN ARBITRATOR MUTUALLY SELECTED AND AGREED TO BY THE PARTIES, OR IF THE PARTIES CANNOT AGREE THEN ONE ASSIGNED BY THE AAA. THE JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. YOU AND WE ARE CHOOSING MEDIATION AND ARBITRATION INSTEAD OF LITIGATION TO RESOLVE OUR CLAIMS AND VOLUNTARILY AND KNOWINGLY WAIVE A RIGHT TO A JURY TRIAL. UNLESS OTHERWISE DETERMINED, EACH OF US WILL BEAR OUR OWN COSTS OF THE MEDIATION AND ARBITRATION PURSUANT TO THE THEN CURRENT FEE SCHEDULE LOCATED AT WWW.ADR.ORG. YOU AGREE THAT WE CAN IN OUR DISCRETION JOIN CONTRACTORS, INSURANCE COMPANIES AND ANY OTHER PERSONS OR ENTITIES INTO THE MEDIATION AND/OR ARBITRATION AT ANY TIME, AND CONSENT TO JOINDER AND PARTICIPATION OF SUCH PARTIES. NO ACTIONS BY US IN RESPONSE TO A LEGAL

3

CLAIM SHALL BE DEEMED A WAIVER OF OUR RIGHT TO MEDIATION OR ARBITRATION. <u>NOTWITHSTANDING THE FOREGOING, WE RESERVE THE RIGHT AND MAY AT OUR DISCRETION EXERCISE THE RIGHT TO COMMENCE LEGAL ACTION IN ANY COURT OF COMPETENT JURISDICTION TO COLLECT MONIES YOU OWE UNDER THIS AGREEMENT, IN WHICH YOU AGREE TO WAIVE THE RIGHT TO MEDIATION OR ARBITRATION.</u>[1]

YOU AND WE, IN PROCEEDING TO MEDIATION AND/OR ARBITRATION, AGREE THAT ALL FACTS ARISING FROM OR RELATED TO THE DISPUTE, INCLUDING RELATED DOCUMENTS USED IN THE MEDIATION AND/OR ARBITRATION, ARE CONFIDENTIAL, AND IF APPLICABLE, ANY ARBITRATION DECISION ISSUED IS ALSO CONFIDENTIAL. SAID DECISION IS FINAL AND BINDING ON THE PARTIES. THE PARTIES FURTHER AGREE THAT THIS DISPUTE RESOLUTION AND ARBITRATION PROVISION DOES NOT, AND IS NOT INTENDED TO, LIMIT, WAIVE AND/OR RELEASE ANY PARTY'S CLAIMS, DAMAGES, AND/OR DEFENSES EACH PARTY MAY HAVE AGAINST THE OTHER, OTHER THAN EACH PARTY WAIVING AND RELEASING THE RIGHT TO PROCEED WITH LITIGATION IN A COURT OF COMPETENT JURISDICTION TO RESOLVE THEIR DISPUTES.

[(Emphasis added).]

---

[1] We refer to this as the "reservation of rights provision" in our opinion.

A-3049-23

The contract was for a total of $114,788.00 and did not specify the project start or end date. On January 28, 2023, the contract was electronically signed by plaintiff and an A&S employee.

Sometime in August 2023, plaintiff requested A&S to begin the pool installation after a series of delays. On September 29, 2023, A&S began excavation on the pool along with a subcontractor, who worked for two hours and did not return. Plaintiff had a discussion with A&S's general manager, who acknowledged that the subcontractor was inexperienced and unfamiliar with excavation in a beach town. A&S's general manager advised plaintiff he would find a new excavator within a few days. On October 16, 2023, after the excavation work had not restarted, plaintiff declared A&S in "material breach" of the contract and informed A&S that he was terminating the contract.

A&S sought $15,617.00 from plaintiff for three days' worth of excavation work and $4,493.00 for permits it had obtained. Therefore, A&S agreed to refund plaintiff $27,890.00 of his approximate $50,000.00 deposit.[2]

---

[2] The contract stated the following under "PAYMENT":

> Payment Terms: You agree to pay us through our iSwim electronic payment system the following amounts at the times noted below:
>
> A. Due at signing of this Agreement: Line 2
> B. Due at excavation: 40% of Line 3

According to plaintiff, A&S's representative falsely advised him that helical pilings needed to be installed, which plaintiff claims he later learned were unnecessary. Plaintiff alleges the helical pilings were installed and cost him $14,000.00.

In February 2024, plaintiff filed a three-count complaint in the Law Division against A&S asserting claims for breach of contract, a violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and for declaratory relief declaring that the "non-mutual and so-called arbitration provision" violates the public policy of this State and is not enforceable. Plaintiff also alleged A&S breached the contract by failing to provide bargained-for services and by "failing to commence, continue, or complete the project in a timely fashion."

Under the CFA, plaintiff asserted A&S's failure to specify a start and completion date constituted an ascertainable loss. Plaintiff alleged the ADR

_____

C. Due at installation of concrete shell: 55% of Line 3
D. Due prior to application of interior finish: the balance of Line 3 less $250.00
E. Due upon securing Certificate of Occupancy: Final Payment of $250.00

1. TOTAL THIS AGREEMENT: $114,788.00
2. LESS DEPOSIT: - $8,791.00
3. BALANCE: $105,997.00

provision is "unconscionable." Plaintiff sought compensatory and consequential damages, CFA remedies, and declaratory relief pursuant to the Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62.

In lieu of filing an answer, A&S moved to dismiss plaintiff's complaint without prejudice under Rule 4:6-2(a),[3] based on the ADR clause. Plaintiff cross-moved for a declaratory judgment, contending that the "arbitration clause" violates public policy and is not enforceable.

On May 14, 2024, the motion court conducted oral argument and reserved decision. On May 30, 2024, in a written opinion, the motion court granted A&S's motion to compel ADR, ordered the parties to "abide by the contractually agreed upon dispute resolution mechanism," and dismissed the complaint without prejudice. The motion court denied plaintiff's cross-motion for declaratory relief.

The motion court concluded the ADR provision satisfied the requirements of Atalese[4] and was enforceable. With respect to the reservation

---

[3] In pertinent part, Rule 4:6-2(a) provides: "Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses . . . may at the option of the pleader be made by motion, with briefs: (a) lack of jurisdiction over the subject matter . . . ."

[4] Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430 (2014).

of rights provision that permits defendant to bring a legal action in the courts of New Jersey for the collection of money and prohibits plaintiff from doing the same, the motion court relied upon our Supreme Court's holding in Delta Funding Corp. v. Harris, 189 N.J. 28 (2006).[5]  In the motion court's view, the holding in Delta was "analogous" to the matter under review because the arbitration clause in Delta permitted the parties to elect arbitration of some claims and adjudication of other claims in courts of law.  Id. at 36.

Applying that framework, the motion court found the clause in this case does not involve foreclosure actions as in Delta.  Accordingly, the motion court held the collection of monies by A&S does not present "an unequal procedural process" and does not present "the same forum splitting issue that the Delta Court had to navigate."  The motion court interpreted the reservation of rights provision to mean that if A&S sued plaintiff in court—ostensibly for monies owed under the contract—then he could file an answer, affirmative defenses, and counterclaims.

The motion court also rejected plaintiff's argument that the ADR provision is unenforceable because it is "procedurally insurmountable," and

---

[5]  The Delta Court assessed the enforceability of a contractual arbitration provision that exempted "foreclosure actions, eviction actions, all rights of self-help including collection of rents, and other similar actions."  Delta Funding Corp. v. Harris, 396 F. Supp. 2d 512, 518 (D.N.J. 2004).

denied factual discovery on this issue. Memorializing orders were entered. This appeal followed.

On appeal, plaintiff presents two arguments for us to consider: (1) the ADR language does not advance the public policy supporting enforceability of arbitration provisions; and (2) the motion court erred in upholding the one-sided ADR provision.

II.

We review de novo the motion court's dismissal orders. Kennedy v. Weichert Co., 257 N.J. 290, 302 (2024). The enforceability of an arbitration agreement is a question of law, which we review de novo. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). "Similarly, the issue of whether parties have agreed to arbitrate is a question of law that is reviewed de novo." Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 472 (App. Div. 2015). Thus, we exercise de novo review of a trial court's order compelling arbitration. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019).

"In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). That preference, "however, is not without limits." Garfinkel v. Morristown Obstetrics &

Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).  Arbitration agreements are subject to customary contract law principles.  Atalese, 219 N.J. at 441.

A valid and enforceable agreement requires:  (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent.  Id. at 442-43.  Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified.  Ibid.; see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319-20 (2019).  "[C]ontract terms should be given their plain and ordinary meaning."  Kernahan, 236 N.J. at 321.

Under both the Federal Arbitration Act (FAA) and New Jersey law, arbitration is fundamentally a matter of contract.  The FAA:

> expressly states that arbitration is a matter of contract. 9 U.S.C. § 2; see also Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010) (explaining that "[t]he FAA reflects the fundamental principle that arbitration is a matter of contract").  In that regard, the FAA "places arbitration agreements on an equal footing with other contracts." Rent-A-Center, 561 U.S. at 67 (citations omitted).  "Accordingly, the FAA 'permits states to regulate . . . arbitration agreements under general contract principles . . . .'" Atalese, 219 N.J. at 441 (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).
>
> [Allstate N.J. Ins. Co. v. Carteret Comprehensive Med. Care, PC, ___ N.J. Super. ___, ___ (App. Div. 2025) (slip op. at 27-28).]

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese, 219 N.J at 442 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). "A legally enforceable agreement requires 'a meeting of the minds.'" Ibid. (quoting Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)). "'[T]o be enforceable, the terms of an arbitration agreement must be clear,' and the contract needs to explain that the agreement waives a person's right to have their claim tried in a judicial forum." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 316 (App. Div. 2024) (quoting Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (2022)).

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. If, "at least in some general and sufficiently broad way," the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447; see also Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016) ("No magical language is required to accomplish a waiver of rights in an arbitration agreement.").

A-3049-23

Plaintiff primarily argues the ADR provision is unenforceable and unconscionable because it is so "one-sided" in favor of A&S. Plaintiff contends the contract therefore cannot constitute a valid arbitration agreement within the meaning of the FAA or the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, because it fails to impose a "mutual obligation to arbitrate."

Here, the contact provides that

> any controversy, dispute or claim, including but not limited to any claim for consumer fraud or any other statutory claim . . . should be submitted by the claimant to non-binding mediation . . . [and] if the parties are unable to resolve the claim through mediation, the claim shall be submitted by claimant for and resolved by binding arbitration . . . .

The contract further provides "[y]ou and we are choosing mediation and arbitration instead of litigation to resolve our claims and voluntarily and knowingly waive a right to a jury trial."

We agree with the motion court that this portion of the ADR provision meets the standards of <u>Atalese</u> and its progeny. The provision clearly and unambiguously evidences a waiver of plaintiff's right to pursue any claims against A&S in a judicial forum and obligates plaintiff to resolve his claims through mediation and arbitration. Here, we are satisfied the ADR provision is governed by the FAA. <u>Antonucci</u>, 470 N.J. Super. at 561. The FAA "places

12                                                                          A-3049-23

arbitration agreements on an equal footing with other contracts." Ibid. (quoting Rent-A-Center, 561 U.S. at 67). Accordingly, "the FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Ibid. (citations omitted).

In Delta, among the host of items raised by the borrower—a seventy-eight-year-old woman with a sixth-grade education and little financial expertise—was that Delta's contract was unconscionable because it grossly favored the lender. Delta, 189 N.J. at 35-36. On a certified question from the Third Circuit, our Supreme Court stated,

> The defense of unconscionability, specifically, calls for a fact-sensitive analysis in each case, even when a contract of adhesion is involved. Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 15-16 (2006). This Court has recognized that contracts of adhesion necessarily involve indicia of procedural unconscionability. Id. at 15. We have identified, therefore, four factors as deserving of attention when a court is asked to declare a contract of adhesion unenforceable. Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 356 (1992).
>
> > [I]n determining whether to enforce the terms of a contract of adhesion, [we] look[] not only to the take-it-or-leave-it nature or the standardized form of the document but also to [(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the "adhering"

13

> party, and [(4)] the public interests affected by the contract.
>
> The Rudbart factors focus on the procedural and substantive aspects of a contract of adhesion in order to determine whether the contract is so oppressive, Martindale, 173 N.J. at 90, or inconsistent with the vindication of public policy, Muhammad, 189 N.J. at 25, that it would be unconscionable to permit its enforcement. Courts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability. See Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 565-66 (Ch. Div. 2002); see also Muhammad, 189 N.J. at 14 n.2 (noting appropriateness of sliding-scale analysis for contracts of adhesion).
>
> [Delta, 189 N.J. at 39-40 (internal citations omitted) (quoting Rudbart, 127 N.J. at 356 (1992)).]

The first three factors speak to procedural unconscionability, and the last factor speaks to substantive unconscionability. Rodriguez v. Raymours Furniture Co., Inc., 225 N.J. 343, 367 (2016).

Factor One

The Subject Matter of the Contract

Here, the subject matter of the contract involved the installation of an in-ground pool at plaintiff's "real estate and improvements" in Mantoloking, which is not his primary residence. The subject matter is thus not a fundamental aspect of plaintiff's life because the pool was being installed at his beach house as an upgrade, and not a necessity of everyday life.

14

## Factor Two

### The Parties' Relative Bargaining Positions

Procedural unconscionability refers to defects in the contracting process, including "lack of sophistication, . . . , bargaining tactics, and the particular setting existing during the contract formation process." Muhammad, 189 N.J. at 15 (internal quotation marks and citation omitted). Here, the bargaining power between plaintiff and A&S is unclear in the record. Plaintiff was a consumer, while A&S is an established corporation, well-versed in the installation of pools. However, plaintiff has failed to present any facts that would show he had an unfair bargaining advantage or was manipulated in some way by the bargaining process.

## Factor Three

### The Degree of Economic Compulsion Motivating the "Adhering" Party

Here, the degree of economic compulsion motivating plaintiff was not a determining factor. Plaintiff engaged in a discretionary purchase for the design and installation of a pool. Plaintiff was free to accept or reject A&S's services and could have hired another pool design and installation company.

Factor Four

The Public Interests Affected by the Contract

The public interest factor is the most important in determining whether a contract of adhesion is unconscionable.  Rudbart, 127 N.J. at 356.  See also Muhammad, 189 N.J. at 19.  This factor requires the court "to determine whether the effect of the arbitration clause provisions that significantly restrict discovery, limit compensatory damages, and prohibit punitive damages 'shield defendant[] from compliance with the laws of this State.'"  Est. of Ruszala ex rel. Mizerak v. Brookdale Living Cmtys., Inc., 415 N.J. Super 272, 298 (App. Div. 2010).

Based upon our de novo review, we conclude the contract here is not a contract of adhesion.  The record shows the contract was not presented to plaintiff on a "take-it-or-leave-it" basis.  Moreover, plaintiff selected A&S to install the pool, had the express right under the contract to retain counsel to review and negotiate contract terms, and had a three-day right of recession. Plaintiff's contention that the ADR provision is unconscionable is unconvincing.  Muhammad, 189 N.J. 15-16.  We conclude plaintiff failed to establish the defense of unconscionability and therefore the ADR provision, with the exception of the reservation of rights provision, which we will next address, is enforceable.  Martindale, 173 N.J. at 91.

16

B.

We part company with the motion court's analysis of the reservation of rights provision. The <u>Delta</u> factors point toward a finding of unconscionability as to the reservation of rights provision only. It is apparent A&S drafted the contract and created an exception to arbitration only for itself the power to pursue a claim for money damages—and potentially other claims—in court if plaintiff failed to pay A&S under the contract while plaintiff may not seek relief in court under any circumstances.

Contrary to what the motion court held, we conclude plaintiff could not assert a counterclaim or defense if A&S exercised its reservation of right. The contract is very clear that <u>all</u> of plaintiff's claims must be brought in arbitration, if mediation is unsuccessful, and not in court.

This grossly unbalanced approach to the availability of a court of law to A&S only constitutes a harsh and unfair one-sided term that lacks mutuality and, therefore, is not enforceable. We conclude A&S was not entitled to summary judgment as a matter of law on the issue of unconscionability with regard to the reservation of right provision. <u>Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C.</u>, 416 N.J. Super 30, 46 (App. Div. 2010). Therefore, we reverse, in part, the orders under review and hold the reservation of rights provision only is unconscionable and unenforceable.

A-3049-23

We also conclude the reservation of rights provision is severable. The "TERMS & CONDITIONS" section of the reservation of rights provision contains a severability clause, which states: "If a judge or arbitrator finds any provision of this [a]greement invalid or illegal under applicable law or regulation, the remaining provisions will still be valid and remain in effect." Notably, the severability clause is only mentioned in the ADR provision in the contract and not elsewhere.

Courts can sever an invalid provision of a contract unless striking the illegal provision "defeats the primary purpose of the contract." Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 33 (1992); Curran v. Curran, 453 N.J. Super. 315, 322 (App. Div. 2018). In making that assessment, we "must determine whether the unenforceability of [the] provision[] renders the remainder of the contract unenforceable." Jacob, 128 N.J. at 32. See also NAACP, 421 N.J. Super. at 437. Severability clauses "are indicative of the parties' intent that the agreement as a whole survives the excision of an unenforceable provision." Arafa v. Health Express Corp., 243 N.J. 147, 169 n.2 (2020).

Moreover, just as we do in interpreting all contracts, we must evaluate whether the plain language of the contract supports severance. See Kernahan, 236 N.J. at 321 ("A basic tenet of contract interpretation is that contract terms

A-3049-23

should be given their plain and ordinary meaning."); see also In re Cnty. of Atl., 230 N.J. 237, 254 (2017) (quoting Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)) (explaining courts cannot write contracts for parties and can only enforce contracts that the parties themselves have made).

Accordingly, courts will not rewrite a "contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 493 (App. Div. 1991) (quoting Levison v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987)). "Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other." Ibid. (citing James v. Fed. Ins. Co., 5 N.J. 21, 24 (1950)); see also Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 560 (App. Div. 2007).

Similarly, in Delta, the contract included a provision that stated, "[i]f any portion of this [a]greement is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this [a]greement or the [c]redit [t]ransaction, each of which shall be enforceable regardless of such invalidity." Delta, 189 N.J. at 36. The Delta Court held that if an "arbitrator were to interpret all of the disputed provisions in a manner that would render them unconscionable, we have no doubt that

19                                                                          A-3049-23

those provisions could be severed and that the remainder of the arbitration agreement would be capable of enforcement. The arbitration agreement's broad severability clause supports that result." Id. at 46.

We are satisfied the one-sided nature of the reservation of rights provision here can be cured by striking it from the contract based on the severability clause.  Striking the reservation of rights provision would leave behind a "clear residue that is manifestly consistent with the central purpose of the contracting parties, and that is capable of enforcement."  See NAACP, 421 N.J. Super. at 437-38 (declining to sever unenforceable parts of an arbitration clause where doing so would "leave[] uncertainty" regarding the reformed language) (internal quotation marks and citation omitted).

In sum, we conclude:  (1) the ADR provision clearly waived plaintiff's right to bring suit; (2) the reservation of rights provision is unconscionable and unenforceable; and (3) the reservation of rights provision is severed from the contract.

Finally, we also hold that the motion court erred in failing to stay plaintiff's complaint pending the arbitration.  The FAA provides that a party may request a stay of a court action that has been commenced if the action involves "any issue referable to arbitration under an agreement in writing for such arbitration."  9 U.S.C. § 3; see also Alfano v. BDO Seidman, LLP, 393

20

N.J. Super. 560, 566, 577 (App. Div. 2007) (holding that "[u]nder [9 U.S.C. § 3] the court must stay an arbitrable action pending its arbitration" after one of the parties applied for a stay). Accordingly, we remand with direction that the motion court enter a new order reinstating plaintiff's complaint and staying the complaint pending the resolution of any mediation and arbitration proceedings.

Affirmed in part, reversed in part, and remanded for entry of a new order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3049-23